**EASTERN INDUSTRIES, Incorporated,**
Plaintiff,

v.

**TRAFFIC CONTROLS, Inc., of Dela-**
ware, Defendant.

Civ. A. No. 1806.

United States District Court
D. Delaware.

May 22, 1956.

Arthur G. Connolly and Thomas Cooch (of Connolly, Cooch & Bove), Wilmington, Del., David S. Kane, Philip T. Dalsimer and Joseph C. Sullivan (of Kane, Dalsimer & Kane), New York City, and Samuel Hershenstein, New York City, for plaintiff.

William Poole (of Berl, Potter & Anderson), Wilmington, Del., and Thomas B. Van Poole (of Mason, Fenwick & Lawrence), Washington, D. C., for defendant.

RODNEY, District Judge.

Plaintiff's motion for a preliminary injunction having come on to be heard on the complaint, the affidavits of various persons, the deposition of Mathias R. Kondolf, and exhibits attached to the affidavits and offered in connection with the said deposition, and the Court having fully considered the affidavits and other matters as presented, the arguments of counsel, and the briefs filed by both parties, now makes the following:

### Findings of Fact.

1. This is an action for a declaratory judgment of invalidity and non-infringement of U. S. Letters Patent No. 2,402,464 issued to Henry Suter and William Ockrant on June 18, 1946, entitled Velocity Measuring System and for injunctive relief and an accounting regarding alleged acts of unfair competition alleged to have been performed by the defendant.

2. Plaintiff seeks a preliminary injunction restraining the defendant, its officers, agents, attorneys, employees and associates, and all persons in active consort and participation with it, from further asserting, contending or alleging

that plaintiff has heretofore infringed or is now infringing upon said U. S. Letters Patent No. 2,402,464, or that any vehicular speed meters previously made by the plaintiff, or now being made by the plaintiff, infringes said U. S. Letters Patent No. 2,402,464, and that the Court restrain the aforesaid from further acts of unfair competition and from directly or indirectly attempting to injure plaintiff's business and reputation.

3. The plaintiff, Eastern Industries, Incorporated is a corporation organized and existing under the laws of the State of Delaware and has been making vehicular speed meters available to the public since 1947.

4. During or prior to 1955, a corporation under the name of Traffic Controls, Inc. existed, and still exists, under the laws of the State of New York. This corporation was interested in traffic matters and owned and possessed an interest in a patent application for "Phototraffic Camera" used in connection with traffic matters.

5. Mathias R. Kondolf was the inventor of the "Phototraffic Camera" and President of Traffic Controls, Inc., the New York Corporation, and he and his two sons comprise three of its five directors.

6. On or about March 7, 1955, Mathias R. Kondolf, individually and in his own behalf, sent letters to the members of the New York State Legislature opposing the passage of legislation then pending before the Legislature regarding the evidentiary value of electrical vehicular speed reading meters, and in his own behalf also sent copies of such letters to various state governors of those states wherein Mr. Kondolf was advised legislation was pending or proposed corresponding to that before the New York Legislature.

7. The defendant, Traffic Controls, Inc. of Delaware, is a corporation organized and existing under the laws of the State of Delaware and was incorporated on March 21, 1955, and of this corporation, Mathias R. Kondolf is also President, but no other person is an officer of both companies but one or more directors are common to both.

8. The defendant corporation was formed to take over the business and assets of Traffic Controls, Inc., the New York Corporation, which said Corporation then owned.

9. The Board of Directors of Traffic Controls, Inc. of Delaware, a Delaware corporation, the present defendant, on July 25, 1955, adopted a resolution to exchange the stock of the Delaware corporation for the shares of stock of the New York corporation upon the basis set out in the resolution of the Board of Directors. The stock of the New York corporation in the hands of its several stockholders has not actually been delivered to the Traffic Controls, Inc. of Delaware, but is under agreement to be so delivered and is being consolidated in the hands of the Traffic Controls, Inc. of New York for delivery.

10. The Board of Directors of Traffic Controls, Inc., a Delaware corporation, on July 25, 1955 also adopted a resolution authorizing the issuance of 87,500 shares of the Delaware corporation to Traffic Controls, Inc., a New York corporation, in payment for the patent rights, cameras, production tools, customer letters, accounts and other assets of Traffic Controls, Inc. of New York then held by such corporation.

The Board of Directors of Traffic Controls, Inc., a New York corporation, on August 4, 1955 adopted a resolution approving and accepting the issuance of said shares of stock of the Delaware corporation to the New York corporation, or its nominees, for the then assets of the New York corporation and approved the sale of a portion of said stock at a specified price and issued a part of said stock to pay off or reduce the claims of the creditors of the New York corporation.

11. The stock of the defendant Delaware corporation issued to the New York corporation under the resolution of July 25, 1955 was authorized to be delivered

prior to the date when any interest in that patent No. 2,402,464 was acquired by Traffic Controls, Inc. of New York, or that any option for such acquisition was had, as hereinafter mentioned.

12. On August 11, 1955, an offering circular concerning the prospective issue of 295,000 shares of the Traffic Controls, Inc. of Delaware at $1 per share was issued by the Delaware corporation. This offering circular recited the history of the "Phototraffic Camera" and that the Delaware corporation was formed to take over the entire business assets of the original company, Traffic Controls, Inc. of New York, and through the public sale of stock to secure capital to finance sales promotion and corporate expenses.

13. On August 19, 1955 and after the stockholding arrangements between the Traffic Controls, Inc., the New York corporation, and the Traffic Controls, Inc. of Delaware, Henry Suter and William Ockrant, both owners of the right, title and interest in and to U. S. Letters Patent No. 2,402,464, entered into an option agreement with Mathias R. Kondolf, individually, granting Mr. Kondolf an option for a period of approximately six months in which to make an investigation and market survey in connection with the said patent, and place an exclusive license under the patent in suit with some corporation to be designated by Mr. Kondolf.

14. On February 17, 1956, the said Henry Suter and William Ockrant granted to the Traffic Controls, Inc., the New York corporation, the exclusive license under said letters patent and sole right, title and interest to all claims and causes of action for past and future infringement of said letters patent, arising from the use of vehicular speed meters.

15. That letters concerning said patent were sent to various people and organizations by Traffic Controls, Inc., the New York corporation, or its representatives, and no action concerning said patent, being the patent involved in this suit, was ever taken or exercised by Traffic Controls, Inc., the Delaware corporation.

The defendant, the Delaware corporation, has not to date entered into any business operation of any kind and has merely issued stock and acquired the title to the pending application for U. S. letters patent relating to the Traffic Control photographic cameras.

16. Any and all business transactions of Traffic Controls, Inc. of Delaware, and the business transacted in the name of Traffic Controls, Inc., a New York corporation, is conducted at 82 St. Paul Street, Rochester, New York.

17. Traffic Controls, Inc. of New York has no paid employees and Traffic Controls, Inc. of Delaware has no regular paid employees except Mathias R. Kondolf and Mrs. Kondolf.

18. That a bank account is maintained in the name of Traffic Controls, Inc., a New York corporation.

19. It appears that when stock of the Delaware corporation is disposed of, the proceeds of such sale have been deposited in the bank account of the New York corporation.

20. No bank account is maintained in the name of Traffic Controls, Inc. of Delaware, but it is not shown that the financial relationship of the two corporations, and the indebtedness of one to the other, may not be adequately set up upon the books of the New York corporation.

### Conclusion of Law.

The sole question of law here involved is whether upon the facts as found a preliminary injunction should be issued in this action against Traffic Controls, Inc. of Delaware, a Delaware corporation. Since this action is a declaratory judgment action concerning the particular U. S. Letters Patent No. 2,402,464 and since the preliminary injunction prayed for is only directed to the Delaware corporation, and since the Delaware corporation itself has no shown connection with the rights to the patent in suit which is in the New York corporation,

384

the conclusion of law here involved is whether the New York corporation is to be considered as the mere agent, adjunct, or instrumentality of the Delaware corporation, the present defendant, as contended for by the plaintiff and denied by the defendant.

The plaintiff has indicated that in order to show the New York corporation is the agent, adjunct or instrumentality of the Delaware corporation, main reliance is had upon the following particulars:

(a) Traffic Controls, Inc. of Delaware is the equitable owner of all the stock of the New York corporation.

(b) That the identity of the President and some of the other directors of the two corporations has been established and the close affiliation and management been shown.

(c) Financial transactions between the companies had established the New York corporation to have been the agent, or adjunct of the Delaware corporation.

The legal principles involved in the determination of the connection between two corporations under circumstances somewhat analogous to the present facts are clearly set out in this District and Circuit in Owl Fumigating Corporation v. California Cyanide Co., D.C., 24 F.2d 718, affirmed 3 Cir., 30 F.2d 812.[1] In the cited case, Judge Morris specifically considered all or most of the specific grounds alleged in this case and held that such grounds, individually or collectively, did not of and by themselves necessarily constitute one company as the mere agent or adjunct of the other.

■ In the cited case, the Court expressly considered the items as contended for:

(a) That stock ownership alone does not create an identity of corporate existence.

(b) Identity of some officers and directors does not establish identity.

(c) That loan of money or financial transactions between the two corporations does not necessarily imply identity.

■ The determination of the question of whether one corporation is the agent, adjunct or instrumentality of another is largely a question of fact and of degree.

Of course, it was held in the cited case that an inquiry into the legal relationship of two corporations, the stock ownership, common officers and financial relationships are not to be ignored and if the subsidiary company is a mere agency or instrumentality used for an improper purpose, the courts will not permit mere form to defeat justice and will deal with the substance of the transaction as if separate corporate entities did not exist.

■ One fact must not be lost sight of. While the present question is solely that of the issuance of a preliminary injunction, the case in which such injunction is sought is a declaratory judgment action concerning U. S. Patent No. 2,-402,464. It clearly appears that the present defendant has not had and does not now have any interest in itself in said patent. It clearly appears all interests in said patent were acquired by the New York corporation after all the stock transactions between the New York corporation and the Delaware corporation were completed, and the Delaware corporation is not shown to have any control over said patent except insofar as it is the equitable owner of the stock of the New York corporation.

This is not a controversy as to the improper use by Kondolf as President of the two corporations of a corporate opportunity by which the Delaware corporation claims beneficial rights in itself to the patent.

The conclusion of law is that the preliminary injunction must be refused and an appropriate order may be submitted.

1. See also 1 Fletcher on Corporations, Sec. 43.