**JAPAN PETROLEUM CO. (NIGERIA) LTD., a corporation, Plaintiff,**

v.

**ASHLAND OIL, INC., a corporation, Ashland of Nigeria, Ltd., a corporation, and Ashland Nigerian Development Company, a corporation, Defendants.**

Civ. A. No. 76–146.

United States District Court, D. Delaware.

Aug. 11, 1978.

David F. Anderson of Potter, Anderson & Corroon, Wilmington, Del., for plaintiff; Robert H. Buchanan and Robert L. Tollefsen of Buchanan, Tollefsen & Besser, Los Angeles, Cal., of counsel.

Lewis S. Black, Jr., William O. LaMotte, III, and Lawrence A. Hamermesh of Morris, Nichols, Arsht & Tunnell, Wilmington, Del., for defendants; L. Linton Morgan of Liskow & Lewis, New Orleans, La., of counsel.

## OPINION

CALEB M. WRIGHT, Senior District Judge.

The present case is an action for breach of a contract entered into by the plaintiff, Japan Petroleum Co. (Nigeria) Ltd. ("Japan Petroleum"), and Ashland Oil (Nigeria) Company ("AON"). Both Japan Petroleum and AON are Nigerian corporations. The defendants are Ashland Oil, Inc. ("AOI"), a Kentucky corporation, and two of its wholly-owned subsidiaries, Ashland of Nigeria, Ltd., and Ashland Nigerian Development Company, both Delaware corporations. The complaint alleges diversity jurisdiction under 28 U.S.C. § 1332.

In June 1976, the defendants filed a Motion to Dismiss for failure to join AON, a subsidiary of the two Delaware corporate defendants, as an indispensable party under Fed.R.Civ.P. 19(b). Following oral argument on the Motion to Dismiss, the Court deferred its ruling in order to permit the parties to conduct discovery on certain issues raised by the briefs. That discovery now has been completed. Presently before the Court is Plaintiff's Motion for Further Consideration and Determination of Defendants' Motion to Dismiss.

## I. FACTUAL BACKGROUND

AON, which is alleged to be an indispensable party which cannot be joined, was formed as a result of defendant AOI's interest in petroleum exploration and production in Nigeria. In 1968, AOI hired a Nigerian consultant to advise it concerning the possibility of Nigerian petroleum operations. AOI then proceeded to collect geological data relating to Nigeria and to send personnel to confer with Nigerian officials. Ashland Exploration, a division of AOI,[1] submitted a formal proposed to the Nigerian Ministry of Mines and Power in 1972. Following a series of negotiations between Mr. George Hardin (President of Ashland Exploration and Senior Vice President of AOI), and representatives of the Nigerian government, a document entitled "Production Sharing Contract—Heads of Agreement between Nigerian National Oil Corporation (NNOC) and Ashland Oil, Inc." (hereinafter "Heads of Agreement"), was executed.

In the Heads of Agreement, AOI obligated itself to incorporate a company in Nigeria for the purposes of carrying out petroleum operations in accordance with a contemplated Production Sharing Contract, the terms of which were contained in the Heads of Agreement. This provision was included in order to comply with the Petroleum Decree 1969 of Nigeria, which provides that a license or lease for oil exploration, prospecting or production of petroleum may be granted only to a citizen of Nigeria or to a

---

1. Ashland Exploration became a subsidiary of AOI in or around 1976.

company incorporated in Nigeria under the Nigerian Companies Decree 1968.

On April 27, 1972, the defendants Ashland Oil of Nigeria, Ltd., and Ashland Nigerian Development Company, incorporated AON as a Nigerian corporation. Each of the incorporators owns a 50% interest in AON.[2] On June 12, 1973, representatives of the Nigerian National Oil Corporation (NNOC), and Mr. Hardin, as president of AON, signed an agreement entitled "Production Sharing Contract between Nigerian National Oil Corporation and Ashland Oil (Nigeria) Company". Neither AOI nor the two incorporators of AON signed the Production Sharing Contract, and it contains no reference to them. Under the Production Sharing Contract AON obtained rights and undertook obligations in connection with exploration, production and disposition of petroleum owned by the Nigerian government.

AON commenced drilling operations after the signing of the Production Sharing Contract. In connection with its drilling program, AON contracted with Japan Petroleum on February 22, 1974, for the use by AON of a petroleum offshore drilling unit known as Meteorite-Tender No. 3, to be provided by Japan Petroleum.[3] This contract was signed only by AON and Japan Petroleum and made no reference to AOI or to the two incorporators of AON. The contract provides that the drilling unit to be supplied must be redelivered to Japan Petroleum in "an equivalent operational condition, normal wear and tear excepted". The complaint in this case alleges, inter alia, that this provision was breached because the drilling rig was lost as a result of AON's negligent conduct of its operations. Japan Petroleum claims approximately $6.3 million in damages.[4]

## II. MOTION TO DISMISS UNDER FED. R.CIV.P. 19

### A. Application of Rule 19 Criteria

■■■ In their Motion to Dismiss, defendants aver that under Fed.R.Civ.P. 19[5],

2. The Nigerian Companies Decree 1968 requires that there be at least two incorporators for the incorporation of a Nigerian company.

The two incorporators of AON were themselves incorporated as wholly-owned subsidiaries of AOI in December 1968, under the names of Ashland Libya Producing Company and Ashland Libya Exploration Company. In April 1970, their names were changed to the present corporate names.

3. Japan Petroleum previously had contracted with Offshore International, S.A., for the latter to provide to Japan Petroleum certain equipment owned by Offshore, including the drilling unit Meteorite-Tender No. 3.

4. Japan Petroleum alleges that the loss of the drilling unit made it impossible for it to use the equipment provided to it under its agreement with Offshore International, S.A., and required it to obtain substitute equipment at a substantially higher cost. Japan Petroleum also claims damages based on AON's failure to pay its pro rata portion of the cost of mobilization and modification of the drilling unit.

5. Fed.R.Civ.P. 19 states in pertinent part:

(a) Persons to be Joined if Feasible. A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant, or, in a proper case, an involuntary plaintiff. If the joined party objects to venue and his joinder would render the venue of the action improper, he shall be dismissed from the action.

(b) Determination by Court Whenever Joinder not Feasible. If a person as described in subdivision (a) (1)–(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties, second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can

AON is an indispensable party which must be joined, but whose presence would destroy the diversity of citizenship which now exists and thereby would deprive the Court of jurisdiction over the subject matter of this action.[6] In order to be an indispensable party within the terms of Rule 19(b), AON first must fit one of the descriptions of "[p]ersons to be [j]oined if [f]easible", contained in Rule 19(a). *See, Wylain, Inc. v. Kidde Consumer Durables Corp.,* 74 F.R.D. 434, 436 (D.Del.1977). Section (1) of Rule 19(a) refers to a person in whose absence complete relief cannot be accorded among those who are already parties to the action. This basis for compulsory joinder is designed to protect the interests of the parties by affording them a complete adjudication of their dispute. It serves the interest of judicial economy by avoiding repeated lawsuits involving the same subject matter. *See* 7 Wright & Miller, *Federal Practice and Procedure* § 1604 at 36–37 (1972). Section (2) of Rule 19(a) covers a person who claims an interest relating to the subject of the action.

On the face of the present complaint, AON appears to meet the description in Section (1) of Rule 19(a), in that it is a person in whose absence complete relief cannot be accorded among the present parties, for the reason that AON alone may be held liable for breach of the contract with Japan Petroleum.[7] AON alone signed the contract and normally would be liable for the obligations which it assumed. The complaint alleges that it was AON's negligence which was responsible for loss of the drilling rig and the resulting damage. Assuming these allegations of the complaint to be true, it appears that AON, not the defendant in this case, would be liable on the contract. Since no judgment could be rendered against AON in its absence, no relief could be granted to the plaintiff without the joinder of AON. *Compare, Prestenback v. Employers' Insurance Co.,* 47 F.R.D. 163 (E.D.Pa.1969).[8]

Plaintiff advanced two theories under which liability might be found to rest on some or all of the present defendants rather than on AON. Paragraph 4 of the complaint alleges that AON acted as the

---

be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

**6.** There is no diversity in a suit between two aliens. *See, Dassigienis v. Cosmos Carriers & Trading Corp.,* 442 F.2d 1016 (2d Cir. 1971). When an alien sues a citizen of a state and another alien, the rule of complete diversity divests a court of jurisdiction under 28 U.S.C. § 1332. *See, Ed & Fred, Inc. v. Puritan Marine Insurance Underwriters Corp.,* 506 F.2d 757 (5th Cir. 1975), citing *Strawbridge v. Curtiss,* 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806); 1 J. Moore, *Federal Practice* ¶ 0.75 at 709.7 (1977). *See also, Romero v. International Terminal Operating Co.,* 358 U.S. 354, 381, 79 S.Ct. 468, 3 L.Ed.2d 368 (1959), in which a Spanish subject sued several United States corporations and a Spanish corporation. The holding of the Court in *Romero* suggests that if there had been no independent basis of federal jurisdiction over the non-diverse respondent (the Spanish corporation), the rule of *Strawbridge v. Curtiss* would have required dismissal of the claims against the diverse respondents.

**7.** In general, where rights sued upon arise from a contract, all parties to the contract must be joined. *See, e. g., Ward v. Deavers,* 92 U.S.

App.D.C. 167, 170, 203 F.2d 72, 75 (1953); *Gauss v. Kirk,* 91 U.S.App.D.C. 80, 81, 198 F.2d 83, 84 (1952).

**8.** In their briefing on Fed.R.Civ.P. 19, the parties have concentrated on part (a)(2)(i) of that Rule, which provides that a party should be joined if "he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may . . . as a practical matter impair or impede his ability to protect that interest." However, if the present defendants cannot be held liable for AON's negligence, the plaintiff could not recover anything in AON's absence, and AON would have no interest to protect. If a judgment could be entered against AON in its absence, then AON would meet the description of Fed.R.Civ.P. 19(a)(2)(i) in that its ability to protect its interest would be impaired or impeded by the disposition of the action in its absence. A corporation generally is an indispensable party in any action affecting its rights and liabilities. *See, e. g., Swan Land and Cattle Co. v. Frank,* 148 U.S. 603, 610, 13 S.Ct. 691, 37 L.Ed. 577 (1893); *Clinton Mining & Mineral Co. v. Cochran,* 247 F. 449 (3d Cir. 1918); *Elkhart Nat. Bank v. Northwestern Guaranty Loan Co.,* 87 F. 252 (3d Cir. 1898).

agent of the three named defendants and "was at all times acting within the course and scope of its authority as such agent".[9] If AON were acting as the agent of the present defendants in executing the contract with Japan Petroleum, the defendants, as principals, would be liable for damages for breach of the contract. *See, Restatement (Second) of Agency* § 140 (1958); W. Seavey, *Handbook of the Law of Agency* § 56 (1964) (hereinafter *Seavey*). Japan Petroleum would be entitled to sue the principals without joining the agent. *See, Milligan v. Anderson,* 522 F.2d 1202, 1204–05 (10th Cir. 1975); *Wylain, Inc., supra,* 74 F.R.D. at 436; *Cone Mills Corp. v. Hurdle,* 369 F.Supp. 426, 438 (N.D.Miss.1974); *Golden v. Kentile Floors, Inc.,* 52 F.R.D. 386, 388 (N.D.Ga.1971); *Cass v. Sonnenblick-Goldman Corp.,* 287 F.Supp. 815, 818 (E.D.Pa. 1968); *Townsend v. Walter Kidde & Co.,* 7 F.R.D. 166, 167 (D.Mass.1945). An alternative theory put forward by Japan Petroleum in the third count of its complaint is that under Nigerian law the two shareholders of AON, defendants Ashland of Nigeria, Ltd., and Ashland Nigerian Development Company, are jointly and severally liable for the liabilities and indebtedness of AON.

■ On a motion to dismiss, the complaint must be viewed in the light most favorable to the plaintiff. *See, Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Helstoski v. Goldstein,* 552 F.2d 564, 565 (3d Cir. 1977), and cases cited therein at n. 4. Therefore, following

oral argument on defendant's Motion to Dismiss, the Court granted leave for further discovery with respect to the theory of agency and the theory of joint and several liability. The Court concluded that if the plaintiff could not succeed on either of these theories, the action should be dismissed for inability to join an indispensable party, AON. Plaintiff now has withdrawn its contentions with respect to the theory of joint and several liability, and is resting its present Motion for Further Consideration and Determination of Defendants' Motion to Dismiss solely on the ground of the agency theory.

It is proper to treat the Defendants' Motion to Dismiss and the Plaintiff's Motion for Further Consideration as cross-motions for summary judgment.[10] Both parties have had full opportunity for discovery on the question of agency. In their briefs, both have referred extensively to material outside the complaint. Courts generally permit "speaking motions" under Fed.R. Civ.P. 12(b)(7). *See,* 5 *Wright & Miller, supra* §§ 1364, 1366; 2A J. Moore, *Federal Practice* ¶ 12.09 (1975). To the extent that defendants' objection to plaintiff's theory of agency has caused its motion under Fed. R.Civ.P. 12(b)(7) to be transformed into a motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6), the Court may convert such a motion into a motion for summary judgment when matters outside the pleading are presented to the court.[11]

---

**9.** The complaint also states that the two defendants, Ashland of Nigeria, Ltd., and Ashland Nigerian Development Company, are agents of AOI, the third defendant (Paragraph 2).

**10.** At oral argument on Plaintiff's Motion for Further Consideration and Determination of Defendants' Motion to Dismiss, plaintiff's counsel suggested that summary judgment would be inappropriate since there was no motion for summary judgment pending. However, in its motion, plaintiff had requested that the Court decide the matter of agency at the present time. In its brief, which accompanied the motion, plaintiff presented extensive factual material obtained through discovery.

**11.** Rule 12(b) provides in pertinent part: "If, on a motion asserting the defense numbered (6) to

dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."

During the course of oral argument on Plaintiff's Motion for Further Consideration, the Court asked plaintiff's counsel what standard of decision should be applied to the pending motions. Mr. Anderson, counsel for plaintiff, suggested that the proper standard would be whether the complaint failed to state a cause of action. This is the standard set forth under Rule 12(b)(6), referred to in the quoted portion

838

In several cases courts have chosen to postpone decision on the matter of agency relationship until a trial on the merits, rather than considering the question on a motion to dismiss for lack of an indispensable party. *See, e. g., Campbell v. Triangle,* 56 F.R.D. 480 (E.D.Pa.1972), and *Townsend v. Walter Kidde, supra,* 7 F.R.D. 166. However, the Court believes that the question of an agency relationship between AON and the present defendants should be decided at the present time, if possible. The question was raised on a motion to dismiss, and the Court has chosen to permit discovery and briefing on the issue. A decision on this question is potentially dispositive of the case, since it is the only theory on which plaintiff now depends to support its allegation that the present defendants may be held liable. Thus, permitting the action to proceed to a trial on the merits without solving the agency relationship question could result in needless expenditure of time and effort on further discovery and trial preparation.[12] Under the circumstances of this case, the interest of judicial economy will be served best by a decision on the question* of agency relationship at the present time.

The Third Circuit has set out the standard for decision on a motion for summary judgment in *Scott v. Plante,* 532 F.2d 939 (3d Cir. 1976):

> "Summary Judgment may only be granted if, taking the non-movant's allegations as true and drawing all inferences in his favor, the court is convinced from ·its review of the evidential sources available that no genuine issue as to a material fact remains for trial, and that the mov-

ing party is entitled to judgment as a matter of law."

*Id.* at 945. The briefing of the parties in this case indicates that there is no genuine issue as to the material facts relating to the question of agency.

### B. Agency Relationship

■ One of the major features of the corporate form of organization is that it insulates shareholders from personal liability for the debts of the corporation. *See,* 1 W. Fletcher, *Cyclopedia of Corporations* § 14 (1974) (hereinafter cited as *Fletcher*). Thus, under ordinary circumstances, a parent corporation will not be held liable for the obligations of its subsidiary. *See,* 1 *Fletcher, supra* § 43. However, in certain instances courts have made exceptions to the general rule.[13] Plaintiff relies on this line of cases to support its argument that the present defendants may be held liable for the alleged breach of contract by their subsidiary, AON. Plaintiff cites the proposition set out by the Supreme Court in a corporate reorganization case, *Consolidated Rock Co. v. DuBois,* 312 U.S. 510, 61 S.Ct. 675, 85 L.Ed. 982 (1941):

> "[I]t is well settled that where a holding company directly intervenes in the management of its subsidiaries so as to treat them as mere departments of its own enterprise, it is responsible for the obligations of those subsidiaries incurred or arising during its management."

*Id.* at 524, 61 S.Ct. at 684. According to plaintiff, the facts of the present case indicate that AON operated as a "mere department" of AOI.[14]

of Rule 12(b) in the previous paragraph of this footnote.

**12.** Unlike *Campbell,* the present case is not ready for trial. The Court has granted leave for discovery only on the issues of agency and joint and several liability. Defendants have not yet filed an answer in this case.

**13.** *See, Annot.,* 38 A.L.R.3d 1102 (1971) for a discussion of cases concerning the liability of a parent corporation for the contracts of its subsidiary.

**14.** Plaintiff has alleged that AON is an agent of all three defendants. However, most of the evidence presented by the parties relates to the

relationship between AON and AOI. The theory that AON is an agent of the other two defendants, which are wholly-owned subsidiaries of AOI, apparently depends on a finding of an agency relationship between AON and AOI. The sole business of Ashland of Nigeria, Ltd. and Ashland Nigerian Development Company is the ownership by each of a 50% interest in AON. All of the officers and directors of the two companies are identical, and all of them also serve as officers or employees of AOI. The two companies have no paid employees. In the remainder of this opinion, the Court will refer for convenience only to the relationship between AON and AOI.

As a preliminary matter, the Court notes that the reasoning of the cases which discuss whether a parent corporation will be held liable for the obligations of its subsidiary has not always been uniform or clear. Some courts have referred to a subsidiary as the "mere instrumentality" or "alter ego" of the parent; others have referred to an agency relationship between the two corporations; while still others have referred to "piercing the corporate veil". *See, Annot.,* 38 A.L.R.3d 1102, 1111 (1971). *See also,* comments of the courts regarding the confusion in this area in, *e. g., National Bond Finance Co. v. General Motors Corp.,* 238 F.Supp. 248, 255–256 (W.D.Mo.1964), *aff'd.,* 341 F.2d 1022 (8th Cir. 1965); *Berkey v. Third Ave. Ry. Co.,* 244 N.Y. 84, 155 N.E. 58, 50 A.L.R. 599, 604 (1926) (Cardozo, J.) (problem of relation between parent and subsidiary corporations is enveloped in "mists of metaphor"); 1 *Fletcher, supra* § 43.

Plaintiff has stated specifically in its reply memorandum [15] that it is urging a theory of agency relationship, rather than the theory referred to as "disregarding the corporate entity", "piercing the corporate veil", or "alter ego". Some courts which have employed the latter phrases have concluded that a subsidiary's separate existence will be disregarded only when this is in the interest of justice, *e. g.,* when it is necessary to avoid fraud or inequity. *See, e. g., Pauley Petroleum, Inc. v. Continental Oil Co.,* 239 A.2d 629, 633 (Del.1968). In addition, a number of courts which have used the term "instrumentality" in relation to a subsidiary, have held that a showing of fraud or injustice is necessary before the parent corporation will be held liable for the obligations of its subsidiary. *See, e. g., Stevens v. Roscoe Turner Aeronautical Corp.,* 324 F.2d 157, 161 (7th Cir. 1963); *Fisser v. International Bank,* 282 F.2d 231, 239 (2d Cir. 1960); *Whayne v. Transportation Management Service, Inc.,* 252 F.Supp. 573, 577 (E.D.Pa.1966), *aff'd. sub nom.,*

*Whayne v. Shuttler,* 397 F.2d 287 (3d Cir.), *cert. denied,* 393 U.S. 978, 89 S.Ct. 445, 21 L.Ed.2d 438 (1968); *Lowendahl v. Baltimore & O. R. Co.,* 247 App.Div. 144, 287 N.Y.S. 62, *aff'd.,* 272 N.Y. 360, 6 N.E.2d 56 (1936). Plaintiff has not alleged that the treatment of AON as a separate corporation would result in any fraud or inequity.

A number of courts have recognized that the agency theory exists independently of those theories which are based on disregard of the corporate entity, and which require a showing of fraud or inequity. The Ninth Circuit in *Pacific Can Co. v. Hewes,* 95 F.2d 42 (9th Cir. 1938), stated:

"A familiar principle of law has been that a corporation is an entity, distinct in itself. It is true that when resourcefulness of man caused a corporation to be used as a scapegoat for another, courts checked the evil. A common statement of one of the rules is that the entity will 'be disregarded . . . where a corporation is so organized and controlled, and its affairs are so conducted, as to make it merely an instrumentality or adjunct of another corporation'. . . . There is just ground for criticism, not of the result reached, but of the theory upon which the result is obtained.

Some of the early cases, in the situation described in the statement of the rule, based the liability on the principles of agency . . . . Later, the liability seems to have been based on the theory that the corporate entity was disregarded . . . . .

We believe the liability in most of such cases is based correctly on the rules ·of agency. . . . As such it is not a new rule of law, but an old one applied to new situations. Where one corporation is controlled by another, the former acts not for itself but as directed by the latter, the same as an agent, and the principal is liable for acts of its agent within the scope of the agent's authority."

---

**15.** Plaintiff's Reply Memorandum with Respect to Motion for Further Consideration and Determination of Defendants' Motion to Dismiss, p. 3 (Docket Number 32).

*Id.* at 45–46. The Reporter for the *Restatement (Second) of Agency* similarly has noted the distinction between the two theories of liability:

"It is useful to distinguish situations in which liability is imposed on a parent because of the existence of the agency relation, in our common-law understanding of that relation, from cases in which the corporate veil of the subsidiary is pierced for other reasons of policy. Unfortunately, however, the courts have not always observed the distinction between these two separate bases for parent's liability. When liability is fastened upon the parent it is said that the subsidiary is a 'mere agent'. The result has been a weakening and muddying of the term 'agent' and a failure by courts to state the real reasons for their decision."

*Restatement (Second) of Agency, Appendix* § 14M, Reporter's Notes at 68 (1958). While some Delaware cases have stated that a showing of fraud or injustice is a prerequisite to disregard of the corporate entity, *see, e. g., Pauley Petroleum, Inc. v.*

*Continental Oil Co.,* 43 Del.Ch. 516, 239 A.2d 629 (1968), at least one Delaware case has noted both the agency theory and the instrumentality theory without reference to fraud. *See, Philadelphia Storage Battery Co. v. Radio Corp. of America,* 22 Del.Ch. 211, 194 A. 414, 429 (1937), *aff'd.,* 23 Del.Ch. 289, 6 A.2d 329 (1939). *See also, Buechner v. Farbenfabriken Bayer Aktiengesellschaft,* 38 Del.Ch. 490, 154 A.2d 684, 687 (1959) (corporate fiction may be disregarded to prevent fraud, and wholly-owned subsidiary may sometimes be treated as instrumentality of parent); *Pauley Petroleum, Inc. v. Continental Oil Co.,* 43 Del. Ch. 366, 231 A.2d 450 (1967), *aff'd.,* 239 A.2d 629 (Del.1968) (decision in lower court on grounds on instrumentality theory without specific reference to fraud). The Court concludes that plaintiff is not required to prove fraud or inequity in order to support its claim of agency relationship between AOI and AON.[16]

Whether an agency relationship exists between a parent corporation and its subsidiary is normally a question of fact.[17]

---

**16.** Framing the question in agency terms does not necessarily put an end to the confusion in terminology. Plaintiff itself describes AON in its brief as an "agent or instrumentality" of AOI and cites cases which use the term "instrumentality". Some courts consider the "agency" and "instrumentality" rationales to be interchangeable. *See, e. g., House of Koscot Development Corp. v. American Line Cosmetics, Inc.,* 468 F.2d 64, 67 n.2 (5th Cir. 1972). In fact, under both theories, courts have employed similar tests based on dominance of the parent corporation over the subsidiary. Thus, some of the cases cited in this opinion refer to a subsidiary as an "instrumentality", while others refer to a subsidiary as an "agent".

**17.** A preliminary question concerns the choice of law to be applied to the issue of agency relationship. The United States District Court of Delaware in a diversity action must apply the conflicts rules of Delaware to determine what law should be applied. *See, Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Prashker v. Beech Aircraft Corp.,* 258 F.2d 602, 605 (3d Cir. 1958).

The construction of a contract is determined by the law of the place of execution and performance, in this case Nigeria. *See, B. S. F. Co. v. Philadelphia National Bank,* 204 A.2d

746, 750 (Del.1964); *Pauley Petroleum, Inc. v. Continental Oil Co.,* 43 Del. Ch. 366, 231 A.2d 450, 457 (1967), *aff'd.,* 43 Del. Ch. 516, 239 A.2d 629 (1968); *Harris v. New York Life Ins. Co.,* 27 Del. Ch. 170, 33 A.2d 154, 157 (1943). The relationship between a principal and an agent is determined in general by the law of the state which has the most significant relationship to the parties and the transaction at issue. *See, Restatement (Second) of Conflict of Laws* § 291 (1971). This suggests the possibility of applying either Nigerian law or perhaps the law of Kentucky or Delaware, the states of incorporation of the present defendants. However, neither of these conflicts rules necessarily governs the question of whether an agency relationship exists between two corporations, one of whom is a party to the contract at issue.

Delaware courts which have considered the question of whether a parent corporation should be subjected to liability for a subsidiary's obligations have applied Delaware law, even in the case of foreign subsidiaries. *See, e. g., Pauley Petroleum, Inc. v. Continental Oil Co., supra* ; *Buechner v. Farbenfabriken Bayer Aktiengesellschaft,* 154 Del. Ch. 490, 154 A.2d 684 (1959). However, as a practical matter, the Court concludes on the basis of the case law that it is unnecessary to determine with certainty what law should apply in this case.

See, *Pacific Can Co., supra*, 95 F.2d at 46; *Eastern Industries v. Traffic Controls*, 142 F.Supp. 381, 384 (D.Del.1956). The central factual issue is control, *i. e.*, whether the parent corporation dominates the activities of the subsidiary. *See, Pacific Can Co., supra* at 45–46. *See also, Restatement (Second) of Agency* § 1; *Seavey, supra* § 1 at 3–5.

In order to determine whether or not a sufficient degree of control exists to establish an agency relationship, the Court must look to a wide variety of factors, such as stock ownership, officers and directors, financing, responsibility for day-to-day operations, arrangements for payment of salaries and expenses, and origin of subsidiary's business and assets. *See, e. g.*, the list of factors contained in *Fish v. East*, 144 F.2d 177, 191 (10th Cir. 1940). "A corporation does not become an agent of another corporation merely because a majority of its voting shares is held by the other". *Restatement (Second) of Agency, supra* § 14M. *See also, Pacific Can Co., supra*, 95 F.2d at 46; *Eastern Industries, supra*, 142 F.Supp. at 384; *Owl Fumigating Corp. v. California Cyanide Co.*, 24 F.2d 718, 719 (D.Del.1928), *aff'd.*, 30 F.2d 812 (3d Cir. 1929); *Scott-Douglas Corp. v. Greyhound Corp.*, 304 A.2d 309, 314 (Del.Super.1973). Nor does the fact that a parent and a subsidiary have common officers and directors necessarily indicate and agency relationship. *See, Pacific Can Co., supra; Eastern Industries, supra; Owl Fumigating, supra; Scott-Douglas, supra*. The fact that a parent corporation finances the operations of a subsidiary is not sufficient to support a finding that the subsidiary is a mere agent or instrumentality of the parent. *See, Owl Fumigating, supra*, 24 F.2d at 720; *Terry Apartments v. Associated-East Mortgage Co.*, 373 A.2d 585, 588–589 (Del.Ch.1977). However, all of these factors may be considered in determining whether the combination of circumstances indicates such a relationship.

A difference in corporate powers between a parent corporation and a subsidiary is an obstacle to finding an agency relationship or disregarding the corporate entity. *See, Fletcher, supra*, § 43 at 210; *Fisser v. International Bank*, 282 F.2d 231, 239 n.14 (2d Cir. 1960). However, the fact that a parent holds out to the public that a subsidiary is a department of its own business increases the likelihood that the parent will be held liable for the subsidiary's acts. *See, Fitz-Patrick v. Commonwealth Oil Co.*, 285 F.2d 726, 730 (5th Cir. 1960); *Annot.*, 38 A.L.R.3d 1102 at § 2. The fact that a creditor corporation takes an active part in the management of a debtor corporation does not indicate the necessary control. *Owl Fumigating, supra*, 24 F.2d at 720. Rather, the control must be actual, participatory, and total. *See, Krivo Industrial Supply Co. v. National Distilling & Chemical Corp.*, 483 F.2d 1098, 1105 (5th Cir. 1973).

The parties have cited two cases dealing with the obligation of parent corporations for the acts of foreign subsidiaries which were organized for the purpose of holding petroleum rights granted by foreign governments. The courts reached somewhat different conclusions, based on the facts and allegations in each case. In *Pauley Petroleum, Inc. v. Continental Oil Co.*, 43 Del. Ch. 366, 231 A.2d 450 (1967), *aff'd.*, 239 A.2d 629 (Del.1968), the plaintiff sued Continental Oil, a Delaware corporation, for an injunction restraining Continental Oil and its agents from prosecuting certain suits in Mexico. The Mexican suits had been filed by Mexofina, the Mexican subsidiary of Continental. The court found that Mexofina was an active corporation which held oil development contracts with a Mexican government agency and which was the actual operator under some of those contracts. Mexofina had its own directors, officers, and records, and had $30 million in

The case can be decided under the general principles of corporate and agency law, which do not vary significantly from jurisdiction to jurisdiction. Furthermore, neither party has suggested that agency principles under Nigerian law differ significantly from those applied by United States Courts.

invested capital, with separate liabilities and bank accounts. Mexofina had between 86 and 550 employees at various times and hired its own independent auditing agents. The court assumed for the purposes of decision that Mexofina was completely subject to Continental's domination with respect to the Mexican lawsuit. Despite the fact that Mexofina and Continental had some officers and personnel in common and that there were other areas in which the two corporations were closely identified, the court concluded that Mexofina could not be said to be a "mere instrumentality" of Continental. The court denied Pauley's motion for preliminary injunction on these grounds, *inter alia*.[18]

In *Fitz-Patrick v. Commonwealth Oil Co.*, 285 F.2d 726 (5th Cir. 1960), the court considered a suit for royalties due from an assignment of a Haitian petroleum concession by Fitz-Patrick to Commonwealth Oil. Commonwealth had caused a wholly-owned Haitian subsidiary to be organized in order to secure the consent of the Haitian government to the assignment of the concession. According to the allegations of the complaint, the subsidiary had been organized only for the purpose of carrying out the contract between Fitz-Patrick and the Haitian government, and the beneficial ownership of the concession actually belonged to Commonwealth. In addition, Commonwealth allegedly had represented itself as the owner of the concession. The court concluded that the complaint sufficiently alleged that the subsidiary was the instrumentality of the plaintiff, and that the question should be resolved by a trial on the merits.

Plaintiff points to a number of factors which tend to support the theory that AON is a mere agent or instrumentality of AOI.

AOI is a worldwide operation whose primary activities include exploration for, production, refining, and marketing of petroleum. In the 1960s, AOI became interested in obtaining a new source of crude oil for its worldwide petroleum operations. Plaintiff contends that AOI organized AON solely to act as an "operating vehicle" for AOI in Nigeria,[19] and that benefits from AON's operation, in the form of a new supply of crude oil, accrue to AOI.

AOI submitted the initial proposals for Nigerian production, AOI personnel conducted negotiations with the Nigerian government, and AOI signed the Heads of Agreement with the NNOC. Plaintiff argues that the basic financing and production obligations were assumed by AOI under the Heads of Agreement, and that those obligations were not superseded when AON signed the Production Sharing Contract. According to plaintiff, AON's sole function is to act as AOI's agent in carrying out AOI's obligations under the Heads of Agreement.

Plaintiff stresses the fact that AOI was active in getting AON's operations underway in the first several years of its existence. AOI set up and financed the two Delaware corporations which acted as the incorporators of AOI and became its only two shareholders. These shareholders in turn provided the initial financing for AON. AOI itself advanced the signature bonus of $3,040,000 required under the Production Sharing Contract. Ashland Exploration, a division of AOI prior to 1976, did the planning for the initial AON drilling programs. An Ashland Exploration purchasing agent placed orders for supplies required for commencement of AON's operations, and an AOI official arranged for the opening of AON bank accounts in New York and Nige-

---

18. On appeal, the Delaware Supreme Court affirmed, emphasizing that there was no showing of fraud and that it was improper to interfere with the prosecution of a law suit commenced in another jurisdiction. *See,* 239 A.2d 629.

19. Plaintiff apparently has adopted this description of AON's role from the deposition of William R. Seaton, Vice Chairman of the Board of Directors of Ashland Oil, Inc. When he was

asked to describe the process of establishing AON, Mr. Seaton responded:

Well, once a decision had been taken as to the general principle of exploring in Nigeria, let's say, then the appropriate people would develop whatever the lawyers thought a proper operating vehicle would be.

Seaton Deposition, p. 22.

ria. AOI recruited general managers for AON beginning in early 1973. Two of these managers were moved from positions with other AOI affiliates, and the other was recruited by AOI officials.

Furthermore, plaintiff points to ongoing joint operations of AOI and AON. Most of the officers and directors of AON are affiliated with AOI or Ashland Exploration.[20] In fact, it is apparently standard procedure for an officer of Ashland Exploration to hold that same office in a number of AOI's foreign subsidiaries. Mr. George Hardin, the president of AON, is a senior vice-president of AOI and president of Ashland Exploration.[21] AON officers receive no separately identified compensation above and beyond what they receive in connection with their positions with AOI or Ashland Exploration. Ashland Exploration, which has a staff of geologists and engineers at its Houston headquarters, provides a number of consulting services to AON and other AOI subsidiaries, especially in connection with geological research and planning of drilling programs.

AON submits its budgets to the AOI Houston office, where they are reviewed by officials of both AON and AOI. Mr. Hardin reviews any proposed expenditures over $100,000 in his capacity both as an officer of AON and an officer of AOI. AOI's Senior Management Committee must approve all AON expenditures over $250,000. The International Treasury Department of AOI determines whether funds should be advanced to AON, or whether loans to AON should be arranged. The Department advances funds to AON and deposits them in AON's accounts. Pursuant to a cash management program for its subsidiaries, AOI pays a number of AON invoices,[22] and the salaries of AON's non-Nigerian employees.

AOI has guaranteed three major bank loans which have been extended to AON.

AOI maintains a blanket insurance policy which covers AOI and all of its foreign subsidiaries. In fact, Ashland Exploration filed a claim under the blanket policy then in force requesting repayment for AON equipment lost in connection with the destruction of the Meteorite-Tender No. 3, the subject matter of the contract at issue in this case. AON sells the oil which it retains under the terms of the Production Sharing Contract to Ashland Bermuda, Ltd., another AOI subsidiary, which in return sells it to Ashland Petroleum, an AOI subsidiary engaged in refining and marketing operations.

Finally, plaintiff points out that AOI represents to shareholders that AON's operations are in fact AOI's operations. For example, AOI's 1973 Annual Report stated: "In June, a Production Sharing Contract was signed with the Nigerian National Oil Corporation through which Ashland will explore for oil. . . ." AOI's 1974 Annual Report stated: "In 1975, Ashland Exploration expects to concentrate on developments of its Nigerian and offshore Louisiana discoveries. . . . Production is scheduled to commence in the Spring of 1975 from two fields on Ashland's on-share block, OPL 118, in Nigeria. . . . Block OPL 118 is one of two tracts held under a Production-Sharing Contract with the Nigerian National Oil Corporation".

■ On the other hand, there are a number of factors which indicate that AON and AOI exist as separate entities and that there is no agency relationship between them. AON is in no way a shell corporation, but is an operating company with extensive obligations and rights of its own under the Production Sharing Contract. Although AOI signed the Heads of Agreement which contains many of the same provisions as the Production Sharing Contract, there is no question that the rights

20. In addition, the officers and directors of AON are almost completely identical to the officers and directors of the two Delaware corporations which incorporated AON.

21. In his position as president of Ashland Exploration, Mr. Hardin is in charge of all exploration and production subsidiaries of AOI, except for those in Canada.

22. In 1973, AOI paid AON invoices in the amount of $3,500,000. In 1975, AOI paid AON invoices in the amount of $3,000,000.

and obligations under the latter contract are those of AON. AON is required to spend a certain amount of money over a specified period to explore for and develop oil and gas production potential in Nigerian territory. Certain of AON's costs of exploration and production may be charged against the oil and gas which AON produces. AON and NNOC are entitled to share in the remaining oil and gas production on a specified basis.

Under Nigerian law and under the Production Sharing Contract arrangement AON possesses corporate powers which AOI cannot possess. The Nigerian Petroleum Decree 1969 provides that only a Nigerian corporation may undertake petroleum exploration and production activity in Nigerian territory.[23] This arrangement presumably allows the Nigerian government more control over petroleum operations within its territory. The Production Sharing Contract establishes a close relationship between AON and the Nigerian National Oil Corporation. AON must consult with NNOC concerning implementation of work programs.[24] The Nigerian government exercises considerable control over AON's operations, particularly in the matter of well locations.

While AON has close ties to AOI, it has many of the indicia of separate corporate existence. The book value of AON's assets as of September 30, 1976 was over $70 million.[25] During fiscal years 1975 and 1976, AON had a gross income exceeding $50 million. AON has three major sources

of assets: the sale of oil obtained from its production, bank loans, and advances of funds from AOI. AON's wells have been successful, and its accounts with AOI have been credited with the proceeds from the sale of the oil.

AON maintains its own bank accounts, one in New York and three in Nigeria. AON prepares its own balance sheets and profit and loss statements,[26] and employs its own independent auditors which are located in Nigeria. AON prepares and submits its own budgets to both AOI and NNOC. While Authority for Expenditures documents are prepared in Houston, they are based on cost estimates submitted by AON. Apparently AOI has not chosen to exercise its modification authority with regard to AON's budget requests. Officers of both AON and AOI arranged for the three bank loans to AON, and AON itself has repaid those bank loans which have come due. Advances from AOI are made at AON's request. As of October 1976, AON had repaid AOI advances in the amount of $67 million. However, the repayments have not been attributed to particular advances.

While AOI pays many of AON's invoices, and also the salaries of AON's non-Nigerian employees, all of these sums are debited from AON's account. AON itself pays the salary of its Nigerian employees. Payments for consulting services of AOI and Ashland Exploration employees are also debited from AON's account. Any recovery relating to AON under AOI's blanket insurance policy, including the recovery for equipment lost in connection with the Me-

23. Defendants state in their brief that Section 2 of the Nigerian Petroleum Decree 1969 precludes a Nigerian company acting as the agent of foreign citizens or companies in engaging in oil and gas exploration, development or production operations in Nigeria. Reply Brief of Defendants in Support of Their Joint Motion to Dismiss for Lack of Jurisdiction, at 7. Plaintiff has not disputed this statement of Nigerian law.

24. For example, in one communication from Ashland Exploration consultants to AON, the former recommended casing specifications in the following terms: "We specified 3000' of 13⅜ because of the limited inventory, but I understand NNOC or MMP may force you to run more." NNOC presumably refers to the

Nigerian National Oil Corporation. *See*, Exhibit D accompanying Affidavit of Robert H. Buchanan re Plaintiff's Motion for Further Consideration and Determination of Defendants' Motion to Dismiss, page 3.

25. This figure covers what has been spent for drilling wells and purchasing equipment, all of which eventually becomes the property of NNOC.

26. Clause 14 of the Production Sharing Contract requires AON to keep complete books and accounts as required by Nigerian law. Officials of NNOC are allowed to assist in the preparation of these books and accounts.

teorite-Tender No. 3, is credited to AON's account. AOI charges the accounts of all of its foreign subsidiaries, including AON, a percentage amount to cover general overhead expenses, including such items as directors' salaries and insurance premiums.

Since early 1973, AON has maintained an office in Lagos, Nigeria, and has hired its own employees to work in Nigeria. By spring of 1974, AON employed a geological exploration staff consisting of five trained geologists. As of February 1977, AON had 125 employees. The AOI employees who provide consulting service to AON work at AON's request and often work together with AON employees. For example, AON employees work with AOI employees in the design of AON production facilities and in planning drilling programs. Both AON staff in Nigeria and AOI staff in Houston evaluate seismic data. AON staff members make the initial recommendations for well locations, which then are submitted to Houston for approval. AON staff handles relations with the NNOC. At times the AON staff makes proposals to NNOC without consulting AOI's Houston staff at all. AON also deals independently with third parties on routine matters. For example, AON's Manager of Operations, Thomas Wintle, arranged and executed the drilling rig contract at issue in this case, with no prior consultation with AOI personnel.[27]

The overall picture presented by the facts described, *supra*, is not one of complete domination or control of AON by AOI. Perhaps the most notable fact is that AON is an operating company, not a shell corporation. AON itself is responsible for exploration and production activities, and AON employees conduct many of the day-to-day operations in connection with these activities. In this respect, it is analogous to the subsidiary in *Pauley Petroleum, supra*, which was the actual operator of certain oil development contracts. AON possesses extensive rights and obligations under the Production Sharing Contract. By virtue of Nigerian law and the Production Sharing Contract AON possesses different powers from AOI, and conducts a separate business.[28] AON has a special relationship with the NNOC under the terms of the Production Sharing Contract.

It is true that AOI and AON conduct joint operations in a number of respects. However, AON possesses sufficient indicia of a separate corporate existence that it cannot be viewed as a mere agent or instrumentality of AOI. These indicia include a substantial source of independent corporate assets (production rights under the Production Sharing Contract), the segregation of AON's accounts within AOI's cash management program, and the employment of AON's own operating personnel. *Compare, Pauley Petroleum, supra*.[29] At least some of the support which AOI rendered to AON came in the early days of AON's corporate existence, in connection with the setting up

---

**27.** Defendants have submitted the affidavit of George C. Hardin, Jr., a director of AON, stating that AON did not act as agent of the defendants in the execution or performance of the contract with Japan Petroleum. *See*, Appendix A to Reply Brief of Defendants in Support of Their Joint Motion to Dismiss for Lack of Jurisdiction. This affidavit is conclusory in nature. Nevertheless, the Court notes that plaintiff has presented no evidence to contradict the affidavit with respect to the Japan Petroleum contract, but has addressed only the overall relationship between AOI and AON discussed in this opinion.

**28.** This is an important factor in determining whether two corporations will be treated as separate entities. *See, Fisser v. International Bank*, 282 F.2d 231 (2d Cir. 1960), in which the court considered whether to enforce against a parent corporation an arbitration provision in a contract made by a subsidiary. The court not-

ed the probability that the parent had no power to carry on a shipping venture, while the subsidiary did have such power. The court stated that the fact that the subsidiary had power to engage in activities without the scope of those authorized for the parent was a factor of considerable weight against piercing the corporate veil of the subsidiary. *See, id.* at 239 n. 14. *See also, Philadelphia Storage Battery, supra* (no sales agency relationship, since business which one corporation conducted was not the same as business of other corporation); 1 *Fletcher* § 43.

**29.** *See also, American Trading & Production Corp. v. Fischbach & Moore, Inc.*, 311 F.Supp. 412 (N.D.Ill.1970), in which the court concluded that a parent corporation's supervision and guidance of the general performance of a subsidiary, as opposed to its actual operation of the business, is not enough to make the latter

of AON's operations. AON's dependence on AOI has diminished to some extent now that its operations are underway.[30]

The fact that some AON operations are coordinated and aided by AOI appears to be largely a function of administrative convenience and economy, rather than a manifestation of control by AOI. Arrangements by a parent and subsidiary for economy of expense and convenience of administration may be made without establishing the relationship of principal and agent. *See Berkey v. Third Avenue Ry. Co.*, 244 N.Y. 84, 155 N.E. 58, 50 A.L.R. 599, 603 (1926). *See also, Philadelphia Storage Battery Co., supra*, 194 A. 414 (fact that two corporations have community of interest and employ economical methods of operations, including combined factory facilities and common insurance policies and auditors, does not make it necessary to disregard corporate entity). In recent years, United States companies have established numerous foreign subsidiaries. Common sense suggests that such parent corporations should be able to establish certain common management programs which promote administrative convenience without destroying the immunity of the parent from liability for the obligations of its foreign subsidiaries, at least when those subsidiaries function as operating entities. Furthermore, certain aspects of the relationship between AOI and AON result from the fact that the former is a creditor of the latter. Where a parent corporation is a large creditor of its subsidiary, the fact that

the former takes an active part in the management of the latter in order to protect its debt does not make it liable for the debts of the subsidiary. *See, Krivo Industrial, supra*, 483 F.2d at 1098 (fact that creditor corporation maintains tight rein on disbursements of a debtor corporation is not sufficient to make latter an instrumentality of former); *Owl Fumigating, supra*, 24 F.2d at 720.

The representations made by AOI in its annual reports that AOI itself conducts petroleum operations in Nigeria suggests that AON serves as an agency or instrumentality of AOI. *See, Fitz-Patrick, supra*. However, such representations may result from public relations motives or an attempt at simplification. *See, e. g., American Trading & Production Corp. v. Fischbach & Moore, Inc.*, 311 F.Supp. 412, 416 (N.D.Ill. 1970) (boastful advertising and consideration of subsidiaries as "family" do not prove that corporate identities were ignored). In any event, this factor is outweighed by the fact that AON is the corporation which possesses the rights and obligations under the Production Sharing Contract. The Court concludes on the basis of all of the facts which the parties have presented that AON cannot be regarded as an agent or instrumentality of AOI.[31]

## C. Rule 19(b) Criteria of Indispensability

■ Plaintiff urges finally that even if the Court finds no agency relationship be-

---

an instrumentality of the former. The court noted that the parent did not negotiate contracts of the subsidiary, purchase goods for the subsidiary, supervise contracting jobs for the subsidiary, or use its own goods, equipment, and employees in the subsidiary's business operations.

**30.** The fact that incorporators have exercised ordinary and temporary control over an incipient corporation does not prevent the corporation from existing as an independent entity thereafter. *See, Fisser, supra*, 282 F.2d at 239.

**31.** At oral argument, counsel for plaintiff raised several new questions regarding the independent existence of AOI and AON. For example, counsel stated that he was not certain whether Mr. Hardin had been elected by the shareholders of AON at the time he executed the Production Sharing Contract on behalf of AON.

Counsel for plaintiff has not followed up these allegations with any further support. Furthermore, there is no dispute that the AON shareholders eventually elected Mr. Hardin and ratified the Production Sharing Contract. It is inconceivable that AON could claim now that it was not responsible for the obligations contained in the Production Sharing Contract. Even if the lines of demarcation between AOI and AON were fuzzy in the early days of AON's existence, the lines had sharpened considerably by the time AON executed the contract at question in this case.

The Court has examined the the case of *Centmont Corp. v. Marsch*, 68 F.2d 460 (1st Cir. 1933), cited by plaintiff's counsel at oral argument. In *Centmont*, the Central Vermont Railway Company caused the formation of the Southern New England Railroad Corporation in order to build a connecting line through Massa-

tween AON and the defendants in this case, the Court must proceed to decide under Rule 19(b) "whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable". Rule 19(b) requires a court to consider four factors in connection with this decision: (1) to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; (2) the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; (3) whether a judgment rendered in the person's absence will be adequate; and (4) whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

Since the Court has concluded that the present defendants cannot be held liable for AON's alleged breach of contract, and since no judgment can be rendered against AON in its absence, then no judgment can be rendered in the present action which would be prejudicial to AON. Thus, the first two factors listed in Rule 19(b) are inapplicable to this case.[32] In light of the impossibility of obtaining any judgment which would be adequate in the absence of AON, the third factor is controlling. Furthermore, under the fourth factor, Japan Petroleum appears to have an adequate remedy if the action is dismissed for nonjoinder. There is an arbitration clause in paragraph 13 of the contract between AON and Japan Petroleum, which the latter presumably can invoke in connection with the alleged breach of contract. Alternatively, no reason has been put forth why Japan Petroleum, a Nigerian corporation, may not sue AON, also a Nigerian corporation, in a Nigerian court of law.

In light of the Court's findings that there is no agency relationship between AON and

chusetts. Under Massachusetts law, a railroad line could be constructed only by a domestic corporation. The court ruled that Central Vermont, which had instituted a receivership against Southern New England, was not entitled to share with the competing creditors, since Southern New England was a mere agent or instrumentality of Central Vermont. While there are certain similarities between the Centmont case and the present case, especially as to the joint operations of the parent and subsidiary, there are several factors which distinguish the case. Most important, once the railroad line had been constructed, it was to be operated and controlled by Central Vermont. In addition, at an administrative hearing, Central Vermont officials had represented that Southern New England was a "mere tool" of Central Vermont. Finally, the fact that there were a number of creditors, including the builder of the railroad, competing for the insufficient assets of Southern New England suggests that it may have been inequitable to allow the parent corporation status as a creditor. No such question of competing claims exists in the present case. The Court concludes that Centmont does not control the question of agency relationship in the present case.

The present case also can be distinguished from Fitz-Patrick, supra, cited by plaintiff in its brief. Fitz-Patrick was decided on a motion to dismiss the complaint. The court concluded that the allegations of the complaint were sufficient to state a claim that the foreign subsidiary was the instrumentality of the parent corporation, but that the validity of the claim would depend on the plaintiff's proof. In the present case, the Court has concluded that the facts show that AON was not an instrumentality of AOI. In addition, the court in Fitz-Patrick was concerned that preservation of the corporate fiction would work a manifest injustice in permitting the parent corporation to escape payment for what it had received. This type of possible injustice does not appear to be present in this case.

**32.** In their initial briefing on Rule 19, the parties concentrated on the factor of prejudice. The cases of Glenny v. American Metal Climax, Inc., 494 F.2d 651 (10th Cir. 1974), and Lang v. Colonial Pipeline Co., 266 F.Supp. 552 (E.D. Pa.), aff'd., 383 F.2d 986 (3d Cir. 1967), cited by defendants, rest primarily on a finding that a judgment which would prejudice an absentee could be rendered against the existing defendants. Plaintiff responded by pointing out that since this case entails money damages rather than injunctive relief, there could be no prejudice to AON. Since the Court concludes that it is the inability to grant complete relief, which is at issue in this case, rather than the possibility of prejudice to an absent person, Glenny and Lang are not controlling. See, however, Glenny, supra at 654, in which the court observed that only if the absent smelter were present could the court grant relief for damages caused by the smelter.

the present defendants, and that AON is an indispensable party under Fed.R.Civ.P. 19, the Court concludes that the present action must be dismissed for failure to join AON.

Submit Order.