**HOUSE OF KOSCOT DEVELOPMENT CORPORATION, Plaintiff-Appellee,**

v.

**AMERICAN LINE COSMETICS, INC., et al., Defendants-Appellants.**

No. 72–2168

Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

Oct. 25, 1972.

---

\* Rule 18, 5th Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Co. of N.Y., 431 F.2d 409, Part I (5th Cir. 1970).

Stephen M. Stone, Tanya M. Plaut, Orlando, Fla., for defendants-appellants.

Michael R. Walsh, Orlando, Fla., John M. Eakin, Mechanisburg, Pa., for plaintiff-appellee.

Before BELL, DYER and CLARK, Circuit Judges.

CLARK, Circuit Judge:

In this Florida-based diversity action for breach of contract, defendants appeal from the judgment of the district court which awarded damages of 112,750 dollars, jointly and severally, against each of two defendant corporations and an individual. Two grounds are assigned on appeal: (1) Defendants, Koscot Interplanetary, Inc. (Koscot), and Glenn W. Turner (Turner), claim that they were entitled to a directed verdict since, under the applicable Florida law, they were not liable for the actions of the third defendant, American Line Cosmetics, Inc. (American Line). (2) All defendants contend the evidence was in-

sufficient to support the damages assessed by the jury. We affirm.

I.

A master franchise agreement was executed by plaintiff, House of Koscot Development Corp. (Development), and the defendant, American Line. By terms of this agreement, Development acquired the right to sell 91 subfranchises for retail cosmetic stores in the State of Pennsylvania. Development's sale of one of these subfranchises, which had been initially approved, was subsequently cancelled by American Line. The jury found that the cancellation constituted a breach of the master franchise agreement and that all three defendants were liable for damages which resulted.

Development contended below that Turner and Koscot were jointly liable with American Line on two alternative theories: First, American Line was the *alter ego* of Turner and Koscot and thus the court should "pierce the corporate veil". Second, Turner and Koscot tortiously interfered with, and induced the breach of, Development's contract with American Line. Turner and Koscot moved for a directed verdict on the alter ego theory, which was denied. The case was submitted to the jury with instructions on both theories of liability but without instructions to return special verdicts on each theory. The jury returned a general verdict for the plaintiff.

Neither Koscot nor Turner objected to the instructions to the jury on the theory of alter ego. However, this omission does not prevent them from now raising the denial of their motion for a directed verdict on this issue, nor does the failure to object to the instructions make the trial judge's statement of the applicable law the "law of the case" for purposes of review of the motion for a directed verdict. "A proper motion for a directed verdict and its denial will always preserve for review the question whether under the law truly applicable

to the case there was an adequate evidentiary basis for the submission of the case to the jury." Coca Cola Bottling Co. of Black Hills v. Hubbard, 203 F.2d 859, 862 (8th Cir. 1953); Hanson v. Ford Motor Co., 278 F.2d 586, 593 (8th Cir. 1960). *See* Gorsalitz v. Olin Mathieson Chemical Corporation, 429 F.2d 1033, 1040, n. 5 (5th Cir. 1970), which has committed this circuit to the rule of these "well reasoned decisions of the Eighth Circuit".

■ This court must therefore decide whether under applicable state law there was sufficient evidence of the abuse of the corporate entity of American Line to hold Turner and/or Koscot liable for the termination of the subfranchise by American Line. In addition to the presence of substantial Florida contacts, the record indicates that all parties tried this case under the assumption that Florida law governed the case. In these circumstances, this court will apply the law of Florida. *See,* Center Chemical Co. v. Avril, Inc., 392 F.2d 289 (5th Cir. 1968).

■ Florida jurisprudence indicates a reluctance to "pierce the corporate veil" unless disregard of the corporate entity is necessary to prevent injustice. *See e. g.,* Roberts' Fish Farm v. Spencer, 153 So.2d 718, 721 (Fla.1963); Advertects, Inc. v. Sawyer Industries, 84 So.2d 21 (Fla.1955). The factors requisite to establish the liability of third parties for the acts of a corporation were summarized in Aztec Motel, Inc. v. State ex rel. Faircloth, 251 So.2d 849, 852 (Fla.1971):

. . . courts will look through the screen of corporate entity to the individuals who compose it in cases in which the corporation is a mere device

or sham to accomplish some ulterior purpose, or is a mere instrumentality or agent of another corporation or individual owning all or most of its stock, or where the purpose is to evade some statute or to accomplish some fraud or illegal purpose.

In the trial court, Development relied primarily on the theory that American Line was an instrumentality or agent for the business activities of Turner and Koscot.[1] Development produced considerable evidence that Turner ignored normal corporate formalities by hiring and firing both American Line and Koscot employees and by making their corporate decisions without consulting officers or other directors. It also offered proof that such control of the corporations by Turner continued even after his stock in both corporations had been placed in voting trusts.

The transaction in which the plaintiff's sale of the subject franchise was at first approved by American Line and then cancelled demonstrates that American Line served as a conduit for Turner's personal business interests. By his own admission, Turner's primary business was promoting a system of franchises and subfranchises. Profits for Turner and his corporations were derived primarily from franchise fees. The actual distribution of cosmetics and accessories to be sold by retail-level subfranchises was secondary to the promotion of sale and resale of franchise rights, as evidenced by the net losses incurred by Turner's corporations in their distribution operations.

The sale of the subfranchise to Keystone Kapital Koscot Distributors, Inc., threatened Turner's promotion system since the purchaser was a corporation

1. There was also evidence that some corporate funds of Turner-controlled corporations had been converted to Turner's personal use and that, as a policy, Turner invested little equity capital in each of his multiple corporations. In light of our holding that Turner could be held liable under the conduit or instrumentality theory, we do not need to decide whether the evidence was also sufficient to establish that American Line Cosmetics was operated as a fraud upon its creditors. *See e. g.,* Sirmons v. Arnold Lumber Co., 167 So.2d 588 (Fla.App.1964); Advertects, Inc. v. Sawyer Industries, *supra*; Riley v. Fatt, 47 So. 769 (Fla. 1950).

composed of Koscot door-to-door distributors. In a conventional business context, this subfranchise would have benefited American Line, and its sole stockholder, since the subfranchisee was a potentially reliable distributor of its retail goods. However, in this case, the sale of the subfranchise was detrimental to the interests of Koscot and ultimately to the interest of Turner, since it aggregated the marketing operations of numerous Koscot distributors, each of whom previously paid a separate monthly franchise fee to Koscot. These distributors, through their American Line retail store franchise, could obtain the same amount of Koscot products by the payment of a single franchise fee to American Line.

 Whenever one uses control of a corporation to further his own, rather than the corporation's business, he will be liable for the corporation's acts under the doctrine of agency, Barnes v. Liebig, 146 Fla. 219, 1 So.2d 247, 255 (1941), or under the principle of identity, Plank v. Arban, 241 So.2d 198, 200 (Fla.App. 1970).[2] In the case *sub judice*, the evidence supported an inference that the cancellation was ordered by Turner to protect Turner's own interests, and those of Koscot Interplanetary, and that in cancelling this sale, American Line operated under the domination and control of Turner and Koscot.[3] The trial

court's denial of a directed verdict on the liability of defendants Turner and Koscot was proper.

## II.

 It is well-established in this circuit that "the sufficiency of the evidence supporting jury submission of a case or the jury's findings is not reviewable on appeal unless the party seeking review has made a motion for a directed verdict in the trial court." Little v. Bankers Life & Casualty Company, 426 F.2d 509, 510 (5th Cir. 1970). The sound policy behind this rule is that "[a party] may not gamble on the verdict and later question the sufficiency of the evidence." Taylor v. Gulf States Utilities Co., 375 F.2d 949, 950 (5th Cir. 1967). In the absence of a timely motion for a directed verdict made to the trial court, "our consideration is limited to whether plain error [was] committed which, if not noticed, would result in a manifest miscarriage of justice." Little v. Bankers Life & Casualty Co., supra, 426 F.2d at 511; Forgason v. Penrod Drilling Co., 409 F.2d 813, 814 (5th Cir. 1969).

 Here, no defendant raised any issue as to the sufficiency of the evidence of damages until the alternative motions for judgment notwithstanding the verdict or new trial. Fed.R.Civ.P.

---

2. Although some commentators have distinguished between the "agency" and "instrumentality" or "identity" rationales, the theories are interchangeable. Weisser v. Mursam Shoe Corporation, 127 F.2d 344, 348 (2nd Cir. 1942).

3. On the propriety of holding both the controlling stockholder and a related corporation liable under the theory of alter ego, see Zaist v. Olson, 154 Conn. 563, 227 A.2d 552 (1967). There may be circumstances where courts may hold a dominant stockholder personally liable for the acts of one of his controlled corporations without piercing the corporate entity between related corporations. *Compare* Walkovszky v. Carlton, 18 N.Y.2d 414, 276 N.Y. S.2d 585, 223 N.E.2d 6 (1966) with a later opinion in the same litigation, 29 A.D. 2d 763, 287 N.Y.S.2d 546 (2d Dept. 1968). However, in the case *sub judice* there was

evidence that American Line was dominated by Turner through Koscot. Koscot paid expenses and salaries of American Line. Ben Bunting, who served as both an officer and the chairman of the Voting Trust of Koscot, made many corporate decisions for American Line, including recommending the cancellation of the subfranchise. Koscot was directly involved in the selection of American Line franchisees: it paid bonuses to purchasers of American Line franchises and in some cases made refunds to franchisees whom it disapproved. In fact, the only truly independent act of American Line officials which appears in the record was the initial approval of the plaintiff's sale of the subfranchise. This sale was cancelled as soon as Bunting and Turner learned of the composition of the subfranchisee.

50(b).[4] A motion for a judgment notwithstanding the verdict is technically only a renewal of the motion for a directed verdict made at the close of the evidence; "it cannot assert a ground that was not included in the motion for a directed verdict." 9 Wright & Miller, Federal Practice and Procedure, § 2537, at 598 (1971). Since the defendants failed to move for a directed verdict on the ground that the evidence of damages was insufficient, and since this failure could not be cured by a motion made after the jury's verdict, the sufficiency of the evidence of damages was not preserved for our review.[5]

The judgment appealed from is Affirmed.

4. All defendants did move for a directed verdict at the end of the plaintiff's evidence and renewed the same motion at the close of all evidence. However, this motion was expressly limited to the issue of whether the evidence was sufficient to hold defendants Koscot and Turner liable for actions of the third defendant, American Line. The sufficiency of the evidence of damages was not raised.

Under Fed.R.Civ.P. 50(a), "A motion for a directed verdict shall state the specific grounds therefor." Where a specific ground is not assigned, the point is not properly preserved for review. Western

Oil Fields v. Pennzoil United, Inc., 421 F.2d 387 (5th Cir. 1970).

5. Under the authority of the decision in Little v. Bankers Life & Casualty Co., *supra*, 426 F.2d at 511, we may inquire whether there was *any* evidence supporting the submission of the issue of damages to the jury, even though we may not question the sufficiency of such evidence as we do find. Our review of the evidence in this case demonstrates that Development presented some evidence as to each item of damages claimed.