The LUBRIZOL CORP.,
Plaintiff–Appellant,

v.

CARDINAL CONSTRUCTION CO., et al., Defendants,

Federal Insurance Co., et al.,
Defendants–Appellees.

No. 88–2204.

United States Court of Appeals,
Fifth Circuit.

March 28, 1989.
Rehearing Denied April 25, 1989.

Robert L. Meyers, III, Terrence M. Murphy, Paul E. Ridley, Jones, Day, Reavis & Pogue, Dallas, Tex., for plaintiff-appellant.

Rufus Wallingford, Thomas C. Godbold, Fulbright & Jaworski, Houston, Tex., for Federal Ins. Co. & Donald W. Shupp Co.

Before GEE, HIGGINBOTHAM, and DUHE, Circuit Judges.

GEE, Circuit Judge:

### Background

This cause of action brought by the Lubrizol Corporation (Lubrizol) for breach of contract, interference with contract, and fraud against Cardinal Construction Co., Tellepsen Construction Co., Federal Insurance Co., and Donald W. Shupp Co., resulted in a jury verdict against Cardinal and Tellepsen for $5 million, plus $250,000 in attorney fees to Lubrizol. The trial court also awarded costs and prejudgment interest at the rate of 7.22% against Cardinal and Tellepsen, neither of which put on a defense at trial, doubtless because each is bankrupt. Neither Cardinal nor Tellepsen is involved in this appeal. The jury also found that neither Federal Insurance nor Shupp was liable in the action, and Lubrizol was required to pay their court costs.

Lubrizol appeals the district judge's refusal to allow instructions on a theory of "agency" against Federal Insurance Co., and disputes the prejudgment interest rate.

### Facts

In 1977, Lubrizol decided to build a monomer manufacturing facility in Bayport, Texas, and its in-house engineers developed a bid package. Lubrizol ultimately contracted with Cardinal Construction for construction services and with Tellepsen Construction for engineering. No payment or performance bond was required of either construction company. Federal Insurance Co. had bonded a number of construction contracts for Tellepsen, but not the contract with Lubrizol.

Cardinal and Tellepsen appear to have substantially underbid the project, and their attempt to "fast-track" the construction by eliminating elevational drawings exacerbated their financial problems. Without proper drawings, more construction mistakes occurred and costs continued to rise. Tellepsen was also experiencing financial problems with other projects and turned to its bonding company, Federal Insurance, for assistance. In May 1979, Federal agreed to advance $12 million to Tellepsen. Since Cardinal would benefit from

the cash advances, it was also made a party to the agreement. To monitor its money, Federal had Donald Shupp overlook the financial affairs of Tellepsen, but without affecting the responsibilities of Tellepsen's officers. Since Federal had no duty to support Tellepsen's unbonded contract with Lubrizol, at one point it told Tellepsen that no more of the funds advanced could be used to support that project. Lubrizol contends that this constituted an instruction to Tellepsen to breach the contract.

The appellant contends that Federal's control was excessive, but the jury found otherwise. The judge instructed the jury on an "instrumentality" theory, but refused to allow instructions on a theory of "agency." The jury found that Federal was not liable. Lubrizol appeals the judge's refusal to instruct the jury on an agency theory. In the alternative, Lubrizol seeks certification of the issue to the Texas Supreme Court. Finally, the appellant challenges the prejudgment interest rate of 7.22%.

### Analysis

#### A. Disregarding the Corporate Entity

The law relating to disregard of the corporate entity, or piercing the corporate veil, is not uniform throughout the United States. There are many different terms ascribed to a cause of action seeking to hold one corporation liable for the actions of another corporation. Common theories use terms and phrases such as "alter ego", "agency", "mere instrumentality", "sham corporation", and "identity". Not only are these terms unhelpful, but they cloud the thinking of lawyers and judges. As Benjamin Cardozo wrote:

> The whole problem of the relation between parent and subsidiary corporations is one that is still enveloped in the mists of metaphor. Metaphors in law are to be narrowly watched, for starting as devices to liberate thought, they end often by enslaving it.

*Berkey v. Third Avenue Railway Co.*, 244 N.Y. 84, 155 N.E. 58, 61 (1926).

One might therefore expect some disagreement as to what the various terms mean. Some courts hold, for example, that the agency theory is the same as the mere instrumentality theory. *See e.g., House of Koscot Development Corp. v. American Line Costmetics, Inc.*, 468 F.2d 64 (5th Cir.1972); *see also Pan Eastern Exploration Co. v. Hufo Oils*, 855 F.2d 1106, 1130–33 (5th Cir.1988). Other courts hold that the two theories are distinct and comprise different elements. *See Pacific Can Co. v. Hewes*, 95 F.2d 42 (9th Cir.1938); *Japan Petroleum Co. (Nigeria) Ltd. v. Ashland Oil, Inc.*, 456 F.Supp. 831 (D.Del.1978).

Both appellant and appellee agree that the instruction regarding liability under the theory of "instrumentality" was accurate. Courts have consistently applied the three elements of the cause of action:

1) complete domination of the other corporate entity;

2) the control must be wrongful; and

3) the control must proximately cause the injury complained of.

*See Johnson v. Warnaco, Inc.*, 426 F.Supp. 44, 48 (S.D.Miss.1976).

In today's case, the jury found Cardinal and Tellepsen liable. Federal was not found liable under the instrumentality theory for its "control" of Cardinal and Tellepsen because the jury found that the second and third elements listed above were not present.

Lubrizol's assertion of error, therefore, is that Judge Hughes refused to instruct the jury on a theory of agency, contending that under the agency theory no wrongdoing is required for Federal to be found liable. Support for this position does exist in other jurisdictions. *See Japan Petroleum, supra.* Appellants further contend that the judge should have instructed the jury on the agency theory as set out in the Restatement (Second) of Agency, section 14–0. That section reads as follows:

> A creditor who assumes control of his debtor's business for the mutual benefit of himself and his debtor, may become a principal, with liability for the acts and transactions of the debtor in connection with the business.

The accompanying comment to the section states in relevant part:

> a. A security holder who merely exercises a veto power over the business acts of his debtor by preventing purchases or sales above specified amounts does not thereby become a principal. However, if he takes over the management of the debtor's business either in person or through an agent, and directs what contracts may or may not be made, he becomes a principal, liable as a principal for the obligations incurred thereafter in the normal course of business by the debtor who has now become his general agent.

According to the appellant, this section ascribes liability for control that is not wrongful; since the jury has already determined under the instrumentality theory that Federal controlled Cardinal and Tellepsen, Lubrizol contends that it is entitled to recover from Federal.

By way of preliminary observation, the commentary would make Federal liable, if at all, only for obligations incurred after it used Donald Shupp to monitor Cardinal's and Tellepsen's financial affairs. The record reveals that this control commenced only after contract formation between Lubrizol and the construction companies. The underbidding, the decision to omit elevational drawings, and the financial problems of the companies all occurred before any control by Federal commenced, a circumstance tending to defeat recovery under section 14-0. The issue in this case, however, is not whether Lubrizol would prevail under the agency theory, but whether it was entitled to have that theory presented to the jury.

It is clear that a judge should not instruct the jury on a theory that is not recognized in Texas. While some states do not consider wrongdoing a requirement for recovery in these circumstances, many do look for some kind of fraud or improper action stemming from the control. Thus, if Texas considers the instrumentality and agency theories to be one and the same, thus requiring some showing of wrongdoing, then the trial court's ruling would have to be affirmed.[1]

■ While it might initially seem that Texas law has not specifically addressed whether liability can be imposed on a controlling corporation without wrongful behavior, a closer examination yields a different conclusion. In *Minchen v. Van Trease*, 425 S.W.2d 435, 437 (Tex.Civ.App.—Houston [14th Dist.] 1968, *writ ref'd, n.r.e.*), for example, the court stated, "While Texas courts may be somewhat more lenient than those of other jurisdictions in disregarding the corporate entity, the reasons for doing so have been well enumerated. These are when the corporation is used to perpetrate a fraud, to evade an existing legal obli-

---

1. Although on this appeal we apply Texas law, other jurisdictions have clear law concerning the issue. In *Krivo Industrial Supply Co. v. National Distillers and Chemical Corp.*, 483 F.2d 1098, 1102–03 (5th Cir.1973) (Alabama), the court listed two reasons for holding one corporation liable for the debts of another corporation. *Id.* at 1102. The first instance is when one corporation impliedly or specifically assumes responsibility for another corporation's debts. *Id.* The second instance for finding liability is when a dominant corporation misuses another corporation. *Id.* Thus Alabama law looks for some wrongdoing before imposing liability.

In *Krivo* we also noted that the terminology in this area of the law is uncertain and that "a subservient corporation may be labeled the instrument, agent, adjunct, branch, dummy, department, or tool of the dominant corporation." *Id.* at 1103. Importantly, the court stated that, "The corporate form ... is not lightly disregarded, since limited liability is one of the principle purposes for which the law has created the corporation." *Id.* at 1102.

In *House of Koscot Development Corp. v. American Line Cosmetics, Inc.*, 468 F.2d 64, 67 n. 2 (5th Cir.1972) (Florida), we stated that, "Although some commentators have distinguished between the 'agency' and 'instrumentality' or 'identity' rationales, the theories are interchangeable." *Id.* In Florida, there is no question that wrongdoing is required for liability to lie against a dominant corporation. Other jurisdictions, including Texas, agree and require "a fraud upon the law". (*See Berkey v. Third Avenue Railway Co.*, 244 N.Y. 84, 155 N.E. 58, 61 (1926), or use of a corporation "as a 'mere agency' or 'mere instrumentality' for perpetrating fraud, or for the purpose of evading the law" (*Hamblen v. Horwitz–Texan Theatres Co.*, 162 S.W.2d 455, 457 (Tex.Civ.App.—Galveston 1942, *no writ*). *See also Humphrey v. Humphrey*, 593 S.W.2d 824, 826 (Tex.Civ.App.—Houston [14th Dist.] 1980, *writ dismissed*) (legal fiction disregarded when used for fraud).

gation, to achieve or perpetrate a monopoly, to protect a crime, to justify a wrong, to circumvent a statute, and when one corporation exists as a mere tool or business conduit of another corporation." *Id.* While the appellants contend that the Texas courts have never considered the agency theory, it is clear that Texas courts simply refuse to find liability without wrong-doing by the controlling corporation. The appellants can point to no case in Texas jurisprudence, nor have we found any, that imposes this sort of liability without wrongdoing.

■ The Texas Supreme Court, in the leading case of *Bell Oil & Gas Co. v. Allied Chemical Corp.*, 431 S.W.2d 336, 339 n. 3 (Tex.1968), wrote that, "The statement that the insulation will be broken down when the subsidiary is an 'agency,' 'adjunct,' 'instrumentality,' 'alter ego,' 'tool,' 'corporate double,' or 'dummy,' of the parent is not helpful. These concepts themselves need defining. At best, they merely state results. And the results are significant only in light of the facts." *Id.* The court also noted that the corporate arrangement "must be one which is likely to be employed in achieving an inequitable result by bringing into operation a basically unfair device...." *Id.* at 340. And again, in *Castleberry v. Branscum*, 721 S.W.2d 270, 271–72 (Tex.1986), the Texas Supreme Court listed the circumstances under which the corporate fiction might be disregarded. *Id.* The circumstances listed all involve some type of wrongdoing. Nowhere does the court suggest that liability may lie without improper behavior. In fact, the court cites with approval a commentator who says the purpose of the law is equity:

> What the formula comes down to, shorn of verbiage about control, instrumentality, agency and corporate entity, is that liability is imposed to reach an equitable result.

Latty, Subsidiaries and Affiliated Corporations 191 (1936). The Texas Supreme Court's emphasis on equity and insistence on a finding of fault or wrongdoing before imposing liability defeats the appellants' argument in the instant case. We affirm the ruling of the trial court and the jury

verdict which found Federal's control was neither wrongful nor the proximate cause of the appellants' loss.

**B. Prejudgment Interest**

The appellant asserts that the trial court improperly set the prejudgment interest rate at 7.22%, when it should have been the 10% rate employed by the Texas Supreme Court in *Perry Roofing Co. v. Olcott*, 744 S.W.2d 929 (Tex.1988). Prejudgment interest rates in Texas have had a checkered history. The confusion was supposedly clarified by *Cavnar v. Quality Control Parking, Inc.*, 696 S.W.2d 549 (Tex.1985), however, where the Texas Supreme Court stated:

> We therefore hold that, as a matter of law, a prevailing plaintiff may recover prejudgment interest compounded daily ... on damages *that have accrued by the time of judgment.* To the extent that other cases conflict with this holding, they are overruled. Prejudgment interest shall accrue at the prevailing rate that exists on the date judgment is rendered according to the provisions of Tex.Rev.Civ.Stat.Ann. art. 5069–1.05 2 (Vernon Supp.1985)

*Id.* at 554 (footnote omitted, emphasis in original).

While *Cavnar* dealt with a personal injury case, some Texas courts have applied *Cavnar* to all types of cases. *See e.g., McCann v. Brown*, 725 S.W.2d 822, 826 (Tex.Ct.App.—Fort Worth, 1987, *no writ*). Other Texas courts have held *Cavnar* inapplicable to contract actions. In *Missouri-Kansas-Texas Railroad Co. v. Fiberglass Insulators*, 707 S.W.2d 943 (Tex.Ct.App.—Houston [1st Dist.] 1986, *ref'd n.r.e.*), the court declined to award prejudgment interest in excess of the 6% rate set by art. 5069–1.03. *Id.* at 948. Although the Texas Supreme Court in *Perry* disapproved of the broad *Fiberglass Insulators* holding that prejudgment interest may never exceed 6%, it did not disapprove the result in that case because the amount of the damages was ascertainable. *Perry, supra*, at 930–31. The court stated that, "By its express terms, the statutory prejudgment interest rate set forth in article 5069–1.03 applies

only to 'accounts and contracts ascertaining the sum payable'". *Id.* at 930. Continuing, the court noted that *"Fiberglass Insulators* involved a claim for contractual damages that were clearly ascertainable from the face of the contract; therefore, the issue of unascertainable damages was not presented because the case was governed by article 5069–1.03." *Id.* at 930. Thus, if the contract adequately shows the measure of liability, article 5069–1.03 seems to govern.

The applicable statute itself is brief:

When no specified rate of interest is agreed upon by the parties, interest at the rate of six per cent per annum shall be allowed on all accounts and contracts ascertaining the sum payable, commencing on the thirtieth (30th) day from and after the time when the sum is due and payable.

The court's interpretation of the statute was set out as follows:

Although we have liberally construed this provision, we have at least required that the contract provide the conditions upon which liability depends and that it fix "a measure by which the sum payable can be ascertained with reasonable certainty."

*Perry, supra,* at 930 (*quoting La Sara Grain Co. v. First National Bank of Mercedes,* 673 S.W.2d 558, 567 (Tex.1984)).

The *Perry* court cites with approval the first case to interpret the statute. *See Federal Life Insurance Co. v. Kriton,* 112 Tex. 532, 249 S.W. 193, 195 (1923). In *Federal Life* the court wrote that it is not necessary for the contract to establish "a definite amount as of a date certain." *Id.* 249 S.W. at 195. Only the conditions upon which liability turns "in light of the attending circumstances" must be set out in the contract. *Id.*

█ The issue thus is whether the contract between Lubrizol and Cardinal ascertains the sum payable. The contract does clearly set forth an ascertainable measure, stating that upon failure to perform, "the cost of such performance and completion shall be deducted from the portion of the Contract Sum not paid to Contractor prior

to the time that the Work is taken over from the Contractor." This contract language governing default should satisfy the liberal construction of the Texas article 5069–1.03 and the Texas Supreme Court's interpretation of the statute in the line of cases from *Federal Life* to *Perry.* It sets out in as reasonably ascertainable a fashion as is practical what the measure of default damages will be. *See, e.g., Stahl Petroleum Co. v. Phillips Petroleum Co.,* 550 S.W.2d 360 (Tex.Civ.App.1977).

The appellant's argument for a 10% rate is thus not persuasive, damages being ascertainable. Article 5069–1.03 controls. While the *Perry* decision disapproves restricting prejudgment interest to 6% in unascertainable cases, it does not do so when the damages are ascertainable. A different conclusion would frustrate the clear meaning of article 5069–1.03. The trial court's award of a rate of 7.22% lacks a basis in Texas law and, had there been a cross-appeal, would be in peril of reversal. There was none, however; and hence we need go no further than to hold that a 10% rate is not called for.

### Conclusion

The trial court properly refused to give an instruction on agency as requested by the appellants. Its instruction on the instrumentality theory was appropriate. In Texas, the corporate veil is not pierced without a showing of wrongdoing, and the appellants failed to show any improper behavior by Federal. The issue of prejudgment interest in Texas is a difficult one because Texas courts have not always been consistent. Although the Texas Supreme Court disapproved limiting prejudgment interest to 6% in every circumstance, when the contract ascertains the sum payable, article 5069–1.05 of the Revised Civil Statutes will control. *See* Tex.Rev.Civ.Stat. Ann. art. 5069–1.05. There being no cross-appeal, the award of 7.22% prejudgment interest is therefore, with all other aspects of the judgment,

AFFIRMED.