**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

_____

No. 91-1088

_____

ATCHISON, TOPEKA AND SANTA
FE RAILWAY COMPANY,

                              Plaintiff-Appellee,

                    versus

SHERWIN-WILLIAMS COMPANY,

                              Defendant-Appellant.

_____

Appeal from the United States District Court
        for the Northern District of Texas
_____

( June 10, 1992)

Before JOLLY, JONES, and EMILIO M. GARZA, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

     This is a diversity case, governed by Texas law,[1] brought by

Atchison, Topeka and Santa Fe Railway Company ("Santa Fe")

against the Sherwin-Williams Company ("Sherwin") to enforce an

indemnification agreement ("the Agreement") entered into by the

parties.  Santa Fe filed suit after one of its employees, John T.

Neal, injured his knee and Sherwin refused to assume any

_____

     [1]    *See Erie R.R. v. Tompkins*, 304 U.S. 64, 78, 58 S. Ct.
817, 822 (1938) (absent federal statutory or constitutional
directive to the contrary, federal court sitting in diversity
jurisdiction applies forum state's substantive law)*; see also
Salve Regina College v. Russell*, __U. S. __, __, 111 S. Ct. 1217,
1221 (1991) ("[A] court of appeals should review *de novo* a
district court's determination of state law .").

liability for Neal's injury.  The indemnification lawsuit was tried to a jury, which found that: (i) the $380,000 Santa Fe paid in settlement of Neal's claim was reasonable, prudent, and made in good faith; (ii) the negligence of both Santa Fe and Sherwin caused Neal's injury; and (iii) Santa Fe paid $8,000 for Neal's necessary medical expenses resulting from his knee injury.  The district court awarded Santa Fe:  $194,000--50 percent of the liabilities incurred by Santa Fe, as prescribed by the shared-liability terms of the Agreement; equitable pre-judgment interest at a rate of 10 percent per annum; post-judgment interest at a rate of 7.78 percent; and 100 percent of the $32,605 in attorney fees.  Sherwin asserts on appeal that:  (i) the medical expenses awarded are unsubstantiated; (ii) the district court's award of attorney fees violates the agreement's "equal splitting of liabilities" provision; and (iii) the district court's award of pre-judgment interest at 10 percent violates the statutory law and the Texas Constitution.  We affirm the district court's award of medical expenses and attorney fees.  We also find that the district court's award of pre-judgment interest at a rate of 10 percent is supported by existing Texas law, but we abstain from deciding this issue pending entry of the Texas Supreme Court's decision in *Sage St. Assoc.'s v. Northdale Constr. Co.*, 809 S.W.2d 775 (Tex. App.--Houston 1991), *on reh'g*, 1991 WL 106492 (unpublished but available on Westlaw).  *See Colorado River Water Conserv. Dist. v. United States*, 424 U.S. 812, 814 (1976) ("Abstention is . . . appropriate where there have been

presented difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case . . . at bar.").

## I

## A

On November 20, 1985, John T. Neal--a switchman/brakeman employed by Santa Fe--injured his right knee while attempting to throw a switch located on the "Yellow Tracks," a portion of the railroad expressly covered by the terms of the Agreement.[2]  Neal filed a claim for his injury against Santa Fe under the Federal Employers Liability Act (FELA).[3]  In accordance with the

---

[2]    Specifically, Sherwin and Santa Fe had entered into an Agreement in 1958 for Santa Fe to provide rail service into Sherwin's White Rock, Texas facility.  The Agreement stipulates:
> In consideration of the covenants of Santa Fe, [Sherwin] agrees as follows:
> 1.    That [Sherwin] will arrange for maintenance at its expense of the Yellow Tracks.
> 2.    That Santa Fe is hereby given the right and permission to operate over the Yellow Tracks.
> 3.    That [Sherwin] will operate the Plant during the term hereof.
> 4.    [That Sherwin] agrees to indemnify and hold harmless Santa Fe for loss, damage or injury from any act or omission of [Sherwin], its employees or agents, to the person or property of the parties hereto and their employees, and to the person or property of any other person or corporation, while on or about the Yellow Tracks; and if any claim or liability shall arise from the joint or concurring negligence of both parties hereto, it shall be borne by them equally.

[3]    *See* 45 U.S.C. §§ 51-60 (1988).  We note that the Agreement is consistent with Santa Fe's potential liability under FELA, which establishes that a railway company has a nondelegable duty to provide a reasonably safe place for its employees to work and is, therefore, liable to its employees for injuries resulting from unsafe conditions on the property of third parties.  *Id*. at § 51.

shared-liability provision of the Agreement, Santa Fe tendered handling of the claim to Sherwin.[4] Sherwin categorically denied liability in a letter dated July 9, 1987.

Sherwin's refusal to assume responsibility for Neal's claim compelled Santa Fe's claims department to investigate the incident and evaluate medical information concerning Neal's injury.[5] Based upon this investigation, Santa Fe paid $8,222.26 in medical expenses on Neal's behalf and then entered into a settlement agreement with him for the sum of $380,000.[6] That

_____

[4] As to Santa Fe's first demand on Sherwin, the parties stipulated as follows:
> By letter dated September 17, 1986, and received by [Sherwin] on September 22, 1986, plaintiff Santa Fe tendered to defendant Sherwin-Williams the handling of a claim for personal injury brought by Santa Fe employee John Neal for injuries allegedly sustained on [Sherwin's] portion of the tracks (the "Yellow Tracks").

Record on Appeal, vol. I, at 243 ¶ 7, *Atchison, Topeka and Santa Fe R.R. v. Sherwin-Williams Co.*, No. 91-1088 (5th Cir. filed Apr. 18, 1991) (Pre-Trial Order) ["Record on Appeal"].

[5] During the time Neal's claim was pending, Santa Fe learned: that Neal was unable to return to work as a switchman-brakeman; that he limped, used a cane, had difficulty climbing stairs, and complained of persistent pain and swelling; and that he had received physical therapy for a year, was being seen by two orthopedic specialists for his knee, and underwent two surgeries on his right knee and one surgery on the left. Neal's physicians recommended during this time that he not return to any form of work requiring jumping on and off equipment, and they assessed Neal's functional disability as a result of his knee injury at 40%. *See* Record on Appeal, Exhibit 10 (Neal's medical records).

[6] Despite efforts made to reemploy Neal, Santa Fe was unable to place Neal in another position providing the salary and job security he required. Santa Fe entered into the settlement agreement with the belief that a jury award would cost Santa Fe significantly more. *See generally* Record on Appeal, vol. IV, at 72-85 (testimony of Mr. Robert N. Carper, claims agent for Santa Fe). This belief was reasonable. *See* Record on Appeal, vol.

-4-

settlement was completed and funded in April 1988 and, after being notified of this settlement, Sherwin again refused to assume any liability.

**B**

Santa Fe filed suit in March 1989 to enforce the shared-liability provision of the Agreement. Seeking contractual indemnity, Santa Fe alleged that Neal's injury was solely the result of Sherwin's negligence and that Sherwin was liable for the entire settlement amount and $8,222.26 in medical expenses. In the alternative, Santa Fe sought contribution for 50 percent of these payments under the terms of the Agreement. Sherwin responded by asserting that Neal's accident was due entirely to the negligence of Santa Fe and Neal, and that Santa Fe properly bore 100 percent of the settlement and medical costs.

The case was tried to a jury which found that: (i) the $380,000 Santa Fe paid in settlement of Neal's claim was reasonable, prudent, and made in good faith; (ii) the negligence of both Santa Fe and Sherwin was a cause of Neal's injury; and (iii) Santa Fe had paid $8,000 in medical bills solely as a result of Neal's injury. With the consent of the parties, the issue of attorney fees was submitted to the district court which found that Santa Fe had reasonably and necessarily incurred $32,605 in attorney fees in prosecuting its claim and awarded that amount to Santa Fe.

---

III, at 117-29; 157-58 (testimony of Mr. Johnson--an attorney experienced in FELA cases that the settlement was extremely favorable to Santa Fe).

This is a limited appeal in which Sherwin essentially seeks only to modify the district court's judgment to reduce its award to Santa Fe. With the exception of the jury's findings regarding Neal's medical expenses, Sherwin accepts the jury's findings and the district court's application of those findings to award judgment to Santa Fe for half of its payments to Neal. However, Sherwin does challenge: (a) the district court's submission of a question regarding the amount of Neal's medical expenses to the jury and the jury's answer to it; (b) the district court's award of attorney fees; and (c) the district court's award of 10 percent pre-judgment interest.

## A

The district court submitted the following question to the jury:

QUESTION NO. 6

Find from a preponderance of the evidence the amount of medical bills paid by plaintiff to Mr. Neal solely as a result of his injury of November 20, 1985.
Answer in Dollars and Cents, or "none."

ANSWER: $ _____

The jury responded by filling in "8,000.00." The district court applied the shared-liability provision of the parties' Agreement and awarded Santa Fe $4,000 as indemnity for these medical expenses. Asserting that there is no evidence to substantiate the reasonableness, necessity, or connection between the medical expenses paid on Neal's behalf and the injuries which gave rise to Neal's settlement with Santa Fe, Sherwin now challenges both

-6-

the court's submission of this question and its acceptance of the jury's answer.

Even in a diversity case, a federal court "applies a federal rather than a state standard for determining whether there is sufficient evidence to create a jury question." *McHann v. Firestone Tire & Rubber Co.*, 713 F.2d 161, 164 (5th Cir. 1983) (citations omitted). The federal standard is well-established:

> The judge must determine whether the evidence is sufficiently in conflict to permit differing views concerning disputed issues of fact and, whether, even if the evidence is not contradicted, conflicting inferences can be drawn from it. An issue cannot be taken from the jury if there are facts on which reasonable and fair minded men and women in the exercise of impartial judgment might reach different conclusions . . . . It is also clear that the fact-finding power that belongs to the jury includes the drawing and rejecting of inferences from the facts.

*Johnson v. William C. Ellis & Sons Iron Works*, 604 F.2d 950, 958 (5th Cir. 1979) (citations omitted). Where a question has been submitted to a jury, the evidence is sufficient to support the jury's finding if--taking all evidence and all reasonable inferences that can be drawn from that evidence in favor of the finding--a reasonable person could have made such a finding.[7]

In their joint pre-trial order, Sherwin and Santa Fe stipulated that Santa Fe paid $8,222.26 on Neal's behalf to cover his medical expenses.[8] This stipulation; the abundant medical

---

[7]    *See McHann*, 713 F.2d at 165 (holding that district court erred in instructing jury that party was negligent as a matter of law where "a jury composed of reasonable and fair-minded persons could have concluded that [the party] was not negligent on these facts").

[8]    The parties filed a joint pre-trial order on August 27, 1990, which reads:

evidence of Neal's knee injury and its seriousness;[9] evidence

that Neal sought and received medical treatment--specifically,

Neal received physical therapy for a year, was seen by two

orthopedic specialists for his knee, and had undergone two

surgeries on his right knee[10] and one on the left[11]--we find that

---

### Established Facts

The following facts are established by the pleadings, answers to interrogatories or responses to requests for production:

\* \* \*

10. From November 20, 1985, until settlement of Mr. Neal's claim, plaintiff Santa Fe paid $8,222.26 in medical expenses on Mr. Neal's behalf.

Record on Appeal, vol. I, at 242-43. Although Sherwin did attach a "Summary of Defendant's Claims" to the joint pre-trial order which asserts that "a portion of the alleged medical expenses Plaintiff paid on behalf of Mr. Neal were unrelated to Mr. Neal's injury on November 20, 1985," Sherwin did not directly contest the reasonableness of these expenses during trial, nor did it explicitly challenge the understanding that these medical expenses resulted from Neal's November 20, 1985 injury--the injury and resulting liability that was the entire premise for trial. Accordingly, Santa Fe had no opportunity to respond to Sherwin's assertions that the evidence is insufficient to support Neal's medical expenses. We consider them now, but only to the extent that we look for plain error. *Cf. United States v. Lopez*, 923 F.2d 47, 50 (5th Cir.) (this court applies plain error standard of review when considering such delayed assertions, meaning that we only consider such a question where failure to do so would result in "manifest injustice") (citation omitted), *cert. denied*, __ U.S. __, 111 S. Ct. 2031 (1991).

[9] *See supra* note 5.

[10] According to Neal's medical expenses which were introduced into evidence as Plaintiff's Exhibit No. 10, the expense for only one of those surgeries was $3,799.

[11] Consider the testimony of Mr. Robert N. Carper, the Santa Fe claims agent with thirty-seven years experience who investigated Neal's claim:

Q. When you first received the claim, did you understand that the injury was a serious one?
A. No. As time progressed and as the medical [record] developed, that determined the seriousness of

Santa Fe provided evidence sufficient for the district court to submit Question No. 6 to the jury and to establish that Santa Fe paid $8,000 to cover Neal's medical expenses for his November 20, 1985 injury.

**B**

Quoting the shared-liability provision of the Agreement, Sherwin also asserts that, because it was held liable for only 50 percent of Neal's claim, Santa Fe is entitled to only 50 percent of the attorney fees it incurred in pursuing indemnification for that claim--not the entire $32,605 awarded by the district court.[12]  We disagree.

The Agreement does not govern the award of attorney fees inflicted upon Santa Fe by Sherwin's failure to comply with *that*

---

the incident.

\* \* \*

Q.   In the long run, what did the medical records indicate to you about the seriousness of Mr. Neal's injury?
A.   I think that Mr. Neal ultimately resulted in having a significant disability in the right knee.  I think it was rated, percentile, maybe 40-percent percentile disability that rendered him incapable of performing.

Record on Appeal at 76-77.

[12]     Specifically, in its Reply Brief, Sherwin argues that: [t]he agreement states that the parties will share `the loss' equally, if they have any joint negligence.  The jury found that both parties were negligent, and therefore all of `the loss' should be shared equally.  This `loss' should include the attorney's fees, and the trial court erred in awarding [Santa Fe] complete indemnity for 100 percent of its attorney's fees, when it was only entitled to contribution for one-half of those fees.

Reply Brief of Appellant at 8, *The Sherwin-Williams Co. v. Atchison, Topeka and Santa Fe Ry. Co*, No. 91-1088 (5th Cir. filed July 31, 1991).

*same Agreement*.[13] As we have stated before, "[a]n award of attorney's fees is entrusted to the sound discretion of the trial court . . . . In diversity cases state law governs the award of attorney's fees." *Texas Commerce Bank Nat'l Ass'n v. Capital Bancshares*, 907 F.2d 1571, 1575 (5th Cir. 1990) (citations omitted). Accordingly, we look to Texas state law, which provides that "[a] person may recover reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for . . . an oral or written contract." Tex. Civ. Prac. & Rem. Code Ann. § 38.001 (West 1986).

By its plain language, section 38.001 entitles Santa Fe to recover 100 percent of the attorney fees it reasonably incurred in pursuing the claims upon which it prevailed at trial. *Id*. The fact that Santa Fe is entitled to recover only 50 percent of Neal's claim does not preclude the award of all fees reasonably and necessarily incurred in pursuing indemnification for Neal's entire claim. *See Rocha v. Ahmad*, 676 S.W.2d 149, 157 (Tex. App.--San Antonio 1984, writ dismissed) ("While Rocha recovered far less than he set out to, we cannot say that his diminished

---

[13] The Agreement establishes that the parties were to share liability for their joint negligence. Were we to include legal costs incurred in enforcing the terms of the Agreement (costs inflicted upon Santa Fe and incurred entirely as a result of Sherwin's failure to comply with the shared-liability provision of the Agreement) in the parties' "shared loss", we would be ruling against the shared-liability purpose of the Agreement. We would also be reducing the incentive to comply with such agreements, as well as the incentive to enter into them in the first place.

recovery in any way precluded a recovery of fees . . . for the prosecution of his claim.").

The district court was familiar with the factual and legal issues involved in Santa Fe's suit, and the extent to which those issues are intertwined.  That court's finding that the entire $32,605.00 incurred by Santa Fe was reasonable for presenting the contribution claims and defending against Sherwin's allegations that Neal's accident was solely caused by Santa Fe's negligence is supported by the record.  Accordingly, we find that the district court did not abuse its discretion and we affirm the district court's attorney fees award to Santa Fe.  *See Perales v. Casillas*, 950 F.2d 1066, 1071 (5th Cir. 1992) (applying abuse of discretion standard for review of award of attorney fees); *Cates v. Sears Roebuck & Co.*, 928 F.2d 679, 689 (5th Cir. 1991) ("The standard for reviewing an attorney's fees award is abuse of discretion.").

## C

The parties do not dispute that Sherwin must pay Santa Fe pre-judgment interest.  Our only task is to determine the appropriate rate of that interest.  Sherwin challenges the district court's award of pre-judgment interest at a rate of 10 percent, asserting that pre-judgment interest cannot rise above the 6 percent  ceiling constructed by Article 5069-1.03 and section 11 of Article XVI of the Texas Constitution.

Sherwin asserts that pre-judgment interest should have been awarded under Article 5069-1.03 of the Texas Revised Civil Statutes which limits pre-judgment interest in certain contract cases to 6 percent.  Article 5069-1.03 reads:

> When no specific rate of interest is agreed upon by the parties, interest at the rate of six percent per annum shall be allowed on all accounts and contracts *ascertaining the sum payable*, commencing on the thirtieth (30th) day from and after the time when the sum is due and payable.

Tex. Rev. Civ. Stat. art. 5069-1.03 (West 1987) (emphasis added). "Thus, if the contract adequately shows the measure of liability, article 5069-1.03 seems to govern." *Lubrizol Corp. v. Cardinal Const. Co.*, 868 F.2d 767, 772 (5th Cir. 1989).[14]  Therefore, the issue before this court is whether the Agreement ascertains a sum payable.

---

[14]    Texas case law applying Article 5069-1.03 suggests that a sum ascertainable must be determinable from the face of the underlying contract. *See infra* note 17.  Such was the case in *Lubrizol* where liability was limited to the overall contract sum:

> The contract does clearly set forth an ascertainable measure, stating that upon failure to perform, `the cost of such performance and completion shall be deducted from the portion of the *Contract Sum* not paid to Contractor prior to the time that the Work is taken over from the Contractor.' This contract language governing default should satisfy the liberal construction of the Texas article 5069-1.03 and the Texas Supreme Court's interpretation of the statute in the line of cases from *Federal Life* to *Perry*.  It sets out in as reasonably ascertainable a fashion as is practical what the measure of default damages will be. *See, e.g., Stahl Petroleum Co. v. Phillips Petroleum Co.*, 550 S.W.2d 360 (Tex. Civ. App. 1977)[, *aff'd*, 569 S.W.2d 480 (Tex. 1978)].

868 F.2d at 772 (emphasis added).  Accordingly, liquidation of damages covered by a non sum-certain contract--a *contract* lacking such an ascertainable limitation on damages--does not transform that underlying contract into one specifying a sum certain for Article 5069-1.03 purposes. *See infra* note 17.

The Agreement entered into by Santa Fe and Sherwin expressly provides that "if any claim or liability shall arise from the joint or concurring negligence of both parties hereto, it shall be borne by them equally."[15] Although Sherwin or Santa Fe could be responsible for all, none, or half the liability arising from any given occurrence on the Yellow Tracks, the Agreement is clear as to what occurrences trigger liability--occurrences arising from "the joint or concurring negligence of both parties." And, once triggered, the Agreement is unambiguous as to the parties' percentage of liability--50 percent of the liability arising from the underlying occurrence. The Agreement places no further limitation or conditions on the parties' liability.

Texas case law suggests that this is not enough to activate Article 5069-1.03. Precisely, anything could have happened on the Yellow Tracks and, so long as it arose out of the "joint or concurring negligence of both parties[,]" Sherwin is responsible for 50 percent of "the resulting liability"--that is, liability with endless potential. For article 5069-1.03 to apply, the case law suggests that we must look to the surface of the contract and see a visible perimeter encircling the prescribed contractual

---

[15]     *See supra* note 2.

liability.[16]  We find no such perimeter in the Agreement and,

---

[16]    For example, in *National Fire Ins. Co. v. Valero Energy Corp.*, 777 S.W.2d 501, 511-13 (Tex. App.--Corpus Christi 1989, error denied), the court applied Article 5069-1.03 because the underlying contract was an insurance policy covering property which had a set value.  The *National Fire* court held:

> An insurance policy is sufficient to constitute a contract ascertaining a sum payable within the meaning of Article 5069-1.03 if the policy provides the conditions upon which liability depends and fixes a measure by which the sum payable can be ascertained with reasonable certainty, in light of the attending circumstances.  *Where the actual value of damaged property is ascertainable with reasonable certainty*, an insurance contract covering that property and specifying the conditions upon which liability depends comes within the interest provisions of Article 5069-1.03.

*Id*. at 512 (emphasis added) (citations omitted).  The same was true in *Thompson v. Trinity Universal Ins.*, 708 S.W.2d 45 (Tex. App.--Tyler 1986, writ ref'd), where, in considering an action brought against a builder's risk insurer for the loss incurred when a building being remodeled was destroyed by fire, the court held:

> The policy provided for payment of an amount not to exceed "this Company's percentage of liability" of "the *actual values* which have been placed into or made a part of each or any of such building or structures."  The actual value of the property lost was ascertainable with reasonable certainty.  Therefore, we hold that appellant is entitled to collect pre-judgment interest of six per cent (6%) on the amounts awarded by the court.

*Id*. at 48 (emphasis added).  This court has also liberally construed Article 5069-1.03 and applied it to a contract case, but that contract also had an outside cap--an overall "Contract Sum"--on potential liability.  *See Lubrizol Corp. v. Cardinal Const. Co.*, 868 F.2d 767, 772 (5th Cir. 1989); *see supra* note 15.

In contrast with these cases, consider *General Life & Accident Co. v. Handy*, 766 S.W.2d 370 (Tex. App.--El Paso 1989, no writ).  In that case, the court held that a major medical policy is not a contract ascertaining a sum payable merely because it specifies the percentage of expenses that it covers. *Id*. at 374:

> Appellant says that although the amount owed under the health policy could vary according to the medical illness, once the illness or medical expenses have been sustained, the insurance policy provides with certainty the amount Appellee is entitled to.  In this respect, the insurance policy becomes a contract that ascertains the sum payable, allowing interest at six percent to be calculated according to Article 5069-1.03.  However, the contract must provide guidance in ascertaining the measure of damages suffered by

-14-

accordingly, we find that Article 5069-1.03 does not apply.


**2**

Sherwin also argues that, should this court find Article 5069-1.03 inapplicable to the Agreement, pre-judgment interest in this case is still limited to 6 percent by section 11 of Article XVI of the Texas Constitution.[17]  Section 11 reads:

> **§ 11.  Usury; rate of interest in absence of legislation**
> Sec. 11.  The Legislature shall have authority to classify loans and lenders, license and regulate lenders, define interest and fix maximum rates of interest; provided, however, in the absence of legislation fixing maximum rates of interest all contracts for a greater rate of interest than ten per centum (10 percent) per annum shall be deemed usurious; *provided, further, that in contracts where no rate of interest is agreed upon, the rate shall not exceed six per centum (6 percent) per annum.*  Should any regulatory agency, acting under the provisions of this Section, cancel or refuse to grant any permit under any law passed by the Legislature; then such applicant or holder shall have the right of appeal to the courts and granted a trial de novo as that term is used in appealing from the justice of peace court to the county court.

---

a party to the contract before Article 5069-1.03 becomes applicable.  *Rio Grande Land & Cattle Company v. Light*, 758 S.W.2d 747, 748 (Tex. 1988).  It appears that the insurance contract in our present case does not contain a provision ascertaining the sum payable as to damages, and like the contract in *Rio Grande Land & Cattle Company*, damages that were suffered could not be determined solely by reference to the contract.

[17]     Specifically, Sherwin argues that we should find Article 5069-1.03 applicable but, in the event that we do not, we should then find Article 5069-1.03 to be unconstitutional. According to Sherwin, section 11 limits pre-judgment interest to 6% for *all contracts where no rate of interest is agreed upon* and Article  5069-1.03 is unconstitutional because it burdens the standard established by section 11 of Article XVI of the Texas Constitution *by adding an "ascertaining the sum payable" provision.*

-15-

Tex. Const. art. XVI, § 11 (1891, amended 1960) (emphasis added).

Sherwin asserts that, according to the plain wording of section 11, pre-judgment interest is limited to 6 percent for *all contracts where no rate of interest is agreed upon*, and that courts have overlooked this provision and mistakenly relied upon *Perry Roofing Co. v. Olcott*, 744 S.W.2d 929 (Tex. 1988).[18] *Perry* holds that, although pre-judgment interest rates are limited to 6 percent under Article 5069-1.03 where damages are reasonably ascertainable, courts may apply an equitable rate of interest to breach of contract actions for unascertainable damages.[19]

The Texas Supreme Court has granted writ on this very issue--that is, the court will determine whether the Texas court

---

[18]    According to Sherwin, the Texas Supreme Court overlooked section 11 in deciding *Perry* because neither party brought the applicability of this provision to the Supreme Court's attention.  The issue whether section 11 has been overlooked for pre-judgment interest purposes is explored in Stephen J. Smith, *Pre-Judgment Interest on Contracts*, Hous. Law. May-June 1989, at 20.

[19]    *Id*. at 930.  Specifically, the *Perry* court held that:
    Article 5069-1.03 is not, however, the only possible basis for an award of prejudgment interest.  This court has also awarded prejudgment interest based on equity.  This court held in *Cavnar v. Quality Control Parking, Inc.*, 696 S.W.2d  549 (Tex. 1985) that equitable prejudgment interest would be awarded in personal injury and wrongful death cases and that the rate for equitable prejudgment interest would be the same as the rate of interest on judgment as set out in Tex.Rev.Civ.Stat.Ann. art. 5069-1.05
                        * * *
    Cases decided prior to *Cavnar* may indicate that the six percent rate available under article 5069-1.03 is the maximum legal rate of prejudgment interest.  However, *Cavnar* provides, "[t]o the extent that other cases conflict with this holding, they are overruled."  696 S.W.2d at 554.
*Id*. at 930-31.

of appeals erred in awarding pre-judgment interest at a rate of ten percent because section 11 of Article XVI of the Texas Constitution provides that the rate of pre-judgment interest shall not exceed 6 percent in contracts where no rate of interest is agreed upon. *See Sage St. Assoc.'s v. Northdale Constr. Co.*, 809 S.W.2d 775 (Tex. App.--Houston 1991), *on reh'g*, 1991 WL 106492 (unpublished but available on Westlaw) (specifying that pre-judgment interest of 10 percent is to be compounded daily because amendment to statute, requiring pre-judgment interest to be compounded annually, become effective subsequent to cause of action).[20]  Although we find that Article 5069-1.03 does not apply to the Agreement and that the district court's award of 10 percent pre-judgment interest is supported by *Perry*, 744 S.W.2d at 929, we abstain from deciding this issue and order the parties in this case to petition this court within thirty days from the date the Texas Supreme Court enters its *Sage* decision.[21]  *See*

---

[20]    In *Sage St.*, an owner and construction contractor brought separate actions against each other in Texas state court which were consolidated.  A jury found that the owner had wrongfully terminated the contractor, and the district court awarded the contractor $2,491,110 and pre-judgment interest at a rate of 10%.  The court of appeals affirmed this judgment, holding that: "When no rate of interest is agreed upon by the parties, interest at the rate of six percent per annum shall be allowed on all accounts and contracts where the *exact sum payable can be determined by the contract itself*."  809 S.W.2d at 778 (citation omitted) (emphasis added).

[21]    The parties' petitions should be accompanied by short memoranda of law--prepared in accordance with this court's rules regarding the submission of briefs and not to exceed ten pages-- summarizing the impact of the *Sage St.* holding on this case.  We also instruct the parties to abstain from filing petitions for rehearing until we have ruled on this pre-judgment interest issue.

*Colorado River Water Conserv. Dist. v. United States*, 424 U.S. 812, 814 (1976) (discussing appropriateness of abstention).

## III

For the foregoing reasons, we AFFIRM the district court as to its award of medical expenses and attorney fees. However we ABSTAIN from deciding the issue of pre-judgment interest pending entry of the Texas Supreme Court's decision in *Sage St.*, 809 S.W.2d at 775. We also ORDER the parties to petition this court within thirty days from the date the Texas Supreme Court enters its *Sage St.* decision.